SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. GERTRUDE M. WATSON, *Defendant in Error*.

Division A.

Opinion Filed August 1, 1927.

572

W. J. *Oven,* for Plaintiff in Error;

*Fred H. Davis* and *Watson* and *Taylor,* for Defendant in Error.

Brown, J.—The defendant in error brought suit in the Circuit Court of Leon County against the plaintiff in error for personal injuries sustained when the automobile in which she was riding, and which was being driven by her husband, was struck by a car propelled by a locomotive of the defendant at a crossing near the union passenger depot in Tallahassee. There was a verdict and judgment for the plaintiff, and the defendant railway company took writ of error.

The defendant demurred to the declaration and also moved for compulsory amendment, but the court below overruled the demurrer and denied the motion. There was no error in the court's action in this regard. Seaboard Air Line Railway Co. v. Good, 79 Fla. 389, 84 So. 733, and cases cited.

The declaration alleged that the collision occurred at a certain point where the defendant's line of railroad was crossed by a certain public street, there being several lines of railroad track at that point, and that said public street at said point was a main thoroughfare over which passed a heavy traffic in automobiles. The defendant interposed the plea of the general issue, and several pleas denying that at said point mentioned its line of railroad tracks crossed a public street; also two pleas of contributory negligence. Plaintiff moved to strike the special pleas denying that the place of collision was at a point where the tracks were crossed by a public street, which motion was granted by the court, and in the order granting such motion to strike the court stated that it was of the opinion "that all matters of defense which could be urged or put in issue by said pleas　*　*　*　are fully covered by the first plea of not guilty.'' If there was error in this action of the court, it will be regarded as error without injury, because the language of the court's order shows that it

would have given the defendant the benefit, under the general issue, of any evidence which it might have seen fit to introduce in support of the special pleas, but the defendant did not offer any. Gainesville & G. R. Co. v. Peck, 55 Fla. 402, 46 So. 1019. The testimony introduced by both parties tended to show that the place of the collision was at a point adjacent to the defendant's passenger station where several of defendant's tracks were intersected and crossed by a public street, and defendant did not attempt to prove that it was not a street. No evidence was introduced by plaintiff to show that this street had been opened and established in due form of law by the City of Tallahassee, but some of the witnesses referred to it as a street, and the evidence showed that for some considerable time it had been and was used as a street, that numerous vehicles passed over it daily, and that it was worked by the city employees; and that this use was with the knowledge and acquiescence of the defendant, which had made rules for its employees to observe when crossing or approaching it which recognized its character as a public thoroughfare. The evidence thus showing beyond controversy that it was constantly *used* by the public as a street, that the public traffic over it was heavy, and there being no evidence to the contrary, we must conclude either that it was in fact a street, or that, to all intents and purposes, so far as the degree of care devolving upon the defendant with regard to operating its engines, cars, and trains across said thoroughfares were concerned, the court and jury had the right to presume that the thoroughfare in question was a public street. Elliott on Roads and Streets, Sections 601, 1155 and note 10; Ivey v. City of Birmingham, 190 Ala. 196, 67 So. 506; Campbell v. City of Elkins (W. Va.), 52 S. E. 220, 2 L. R. A. (N. S.) 159. Defendant in error contends that these pleas constituted a negative pregnant,

citing Gould on Pleadings, Sec. 29; 2 Standard Encyc. of Proc. 57; 21 R. C. L., p. 560; Ann. Cas. 1917 A, 669. But it is not necessary for us to decide this question, for the reasons above given.

The seventh assignment of error is based upon the action of the Court in sustaining plaintiff's objection to a question put to witness Williamson, "Was it customary to do that?" The witness had just testified that the air brake apparatus was not used in short switching movements when a car was being moved a few feet or yards. He had been cross-examined to a considerable extent by the plaintiff with reference to the use of air brakes in the movement of regular trains, as if the collision in this case had been caused by the movement of a regular train as distinguished from a short switching movement in the yard. The Court sustained the objection to this question and the defendant excepted. The Court cannot be put in error for its action in this regard. If a party's act is inherently negligent, he cannot justify it by showing that he was customarily negligent in the performance of similar acts. Customary negligence is no justification for the particular negligence complained of. The question as framed does not indicate whether it referred to the custom of the witness himself, who was an engineer, or to the custom of the defendant railway company, or the custom of railways in general. If the question had been asked as to the general custom of railroads in that particular, it would have been permissible and proper. "What usually is done may be evidenced of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas and Pac. R. Co. v. Behymer, 189 U. S. 468, 47 L. Ed. 905, 906; Wabash Ry. Co. v. Mcdaniels, 107 U. S. 454, 27 L. Ed. 605; 20 R. C. L. 27; 27 R. C. L. 194. While in some jurisdictions the

ordinary usage or custom of the business or occupation is made the test of negligence, the weight of authority is that as negligence is the doing or failure to do what ordinarily prudent men would do under the same circumstances the test of ordinary custom, while relevant and admissible in evidence, is not controlling, especially where the custom is clearly a careless or dangerous one. 29 Cyc. 435, and cases cited; George v. M. & O. R. Co., 109 Ala. 245, 19 So. 784. It would seem to us that the proper rule in such a matter would be, in cases where the method used was not clearly and inherently negligent or dangerous, to admit evidence of the general custom of others engaged in the same kind of business or occupation, as to the particular method under investigation, for the consideration of the jury for whatever light it might throw upon the question as to whether or not the method used was or was not negligent under the circumstances of the particular case, but not to any extent whatever as conclusive of the question. There is a common-sense and reasonable basis for the contention that what is *ordinarily and usually* done by men generally, engaged in the same work, has some relevancy to the inquiry as to what an ordinarily prudent person would do under the same circumstances. 29 Cyc. 436, and cases cited under note 44. Also, as bearing on this question, see S. A. L. R. Co. v. Minor, 82 Fla. 492, 90 So. 611. Of course, a railway company cannot rely upon a custom which is contrary to law or its own rules. However, that does not appear to be the case here. It might be noted that the Federal Safety Appliance Act, and the rules of the Interstate Commerce Commission pursuant thereto, regarding the use of air brakes on trains, is not construed to apply to ordinary switching operations in railroad yards. Richey's Federal Employers Liability, 2nd Ed., p. 483, *et seq*. United States v. Erie R. Co., 237

U. S. 402, 59 L. Ed. 1019; U. S. v. C. B. & Q. R. Co., 237 U. S. 410, 59 L. Ed. 1023; Elliott on Railroads, 3rd Ed., Secs. 1989, 2025. Furthermore, the statute shows on its face that it was enacted "to promote the safety of employees and travelers upon railroads engaged in interstate commerce." It can hardly be contended that the Federal statute was applicable under the evidence in this case.

Under the issue of contributory negligence, we do not think that the contributory negligence, if any, on the part of plaintiff's husband, who was driving the car, could be imputed to her, or that she was, under the evidence, herself guilty of negligence, causing or contributing to cause her injury. The plaintiff's seventeen-year-old daughter was riding on the front seat with plaintiff's husband, and plaintiff was on the rear seat, endeavoring to put her baby to sleep, and, to use her language, "fixing his bottle at the time," of the collision. The small side curtains were up. She was not in a position to observe what was ahead or to the side. Plaintiff and her family were merely passing through Tallahassee on their way to South Florida and she was not familiar with the railroad crossing in question. There is no evidence that the driver of the car was under the control of the plaintiff, or that she had been or was in any way exercising such control.

There are a great many cases holding that a passenger in an automobile, having an equal opportunity with the driver to exercise his faculties, does not have the right to rely wholly on the driver for protection, and is obliged to look out for himself in approaching a railroad crossing in an automobile, and should warn the driver of the approach of a train and prevent him, if possible, from driving on the crossing in the way of such train. See note with extensive citation of authorities in 18 A. L. R. 309; also

Lambert v. E. M. St. Ry. Co., 240 Mass. 495, 134 N. E. 340, 22 A. L. R. 1291, and note on page 1294. But there appears to be little or no dissent to the proposition that the negligence of the husband is not to be imputed to the wife unless he is her agent in the matter in hand, or they are jointly engaged in the prosecution of a common enterprise. The mere existence of the marital relation will not have the effect to impute the negligence of the husband to the wife. 20 R. C. L. 151. Thus in Brubaker v. Iowa County, 183 N. W. 690, 18 A. L. R. 303, it was held that the mere fact that a man and his wife were journeying together in a motor car from one city to another for the purpose of changing their abode, with the intention on his part to teach and on her part to prepare for and take a business position, does not constitute their journey a joint enterprise so as to impute to her his negligence in handling the car. It was also held in the same case that a passenger on the back seat of an automobile traveling over a road in apparently good condition is not bound to pay constant attention to the management of the car, or to keep constant look out for imperfections in the road. Of course, where the action was by the husband in his individual capacity, to recover for injuries to his wife, negligence on his part which contributed to the injury affords good ground for proper plea. Kokesh v. Price, 161 N. W. 715, 23 A. L. R. 643. See also Knoxville Ry. & Light Co. v. Vanglider, 178 S. W. 1117, L. R. A. 1916 A, 1111. It was pointed out by the Supreme Court of Tennessee in the last cited case, which contains a very thorough review of the authorities, that the rule that the occupant of the vehicle will be imputed with the negligence of the driver has for its basis the English case of Thorogood v. Bryan, 8 C. B. 115, but the authority of that case has often been denied in other

jurisdictions, and was finally overruled by the English courts.

We see no reason why the contributory negligence of the husband should be imputed to the wife under the circumstances of this case, and this holding is in line with the great weight of authority. In spite of numerous comments in the public press upon "back-seat drivers" among married women whose husbands happen to be at the wheels of automobiles, the law continues to presume, as was said in the Tennessee case cited, that "the husband is not under the control and direction of the wife" and that "she is not chargeable with the manner of his driving, or in directing how the driving shall be done," as appears in the case at bar. "It is not supposed that the wife has charge over matters of this kind. She rather relies upon her husband, and trusts to his guidance and protection." * * * However, it is added: "If an adult, while riding in a vehicle driven by another, sees, or ought by due diligence to see, a danger not obvious to the driver, or who sees that the driver is incompetent or careless, or is not taking proper precautions, it is his duty to give some warning of danger, and his failure to do so is negligence. Ordinarily, however, a driver is intrusted with caring for the safety of a carriage and its occupants, and unless the danger is *obvious*, or *is known to the passenger*, he may rely upon the assumption that the driver will exercise proper care and caution. We think this rule that the passenger should exercise diligence when proper to do so would also devolve upon the wife riding with her husband. If the wife should see a danger not apparent to the husband, or observe that he was about to run into danger it would be her duty to notify him, or else she would be chargeable with neglect of her own safety, which in some cases might bar her right of recovery for injuries received."

See also Hazel v. Hoopsten-Danial Motor Co. (Ill.) 141 N. E. 392, 30 A. L. R. 491.

The general rule deducible from the majority of decided cases is that (where there is no relationship between the driver and the person injured, such as principal and agent, or master and servant, which would charge the latter with the former's negligence), a person riding in an automobile driven by another, even though not chargeable with the driver's negligence, is not absolved from all personal care and responsibility for his own safety, but is under the duty of exercising reasonable or ordinary care to avoid injury, that is, such care as an ordinary prudent person would exercise under like circumstances. But the doctrine of imputed negligence has received small recognition in this jurisdiction. Porter v. Jacksonville Electric Co., 64 Fla. 409, 60 So. 188; Tampa Electric Co. v. Bazemore, 85 Fla. 164, 96 So. 297.

Although the plaintiff was not under the evidence chargeable with the contributory negligence of her husband, yet if he was negligent in driving the automobile upon the track in front of the approaching railroad cars, and this negligence on his part was the *sole proximate cause* of the collision and the resulting injury, plaintiff would have no right to recover against the defendant railway company.

It is negligence which proximately causes or contributes to causing the injury or damage which creates legal liability. There may be concurrent causes of a single injury—concurrent negligence of two separate and distinct agencies—which, operating contemporaneously, together constitute the efficient proximate cause of the injury inflicted, and without either one of which the harm would not have been done. But if two distinct causes are successive and unrelated in their operation, they cannot be

concurrent. One of them must be the proximate and the other the remote cause, and the law will regard the proximate as the efficient and responsible cause, disregarding the remote cause. 22 R. C. L. 128. In an action for injury alleged to be due to the negligence of the defendant, it is no defense that the act or omission charged was not the sole and only cause of the injury. If the defendant's act or omission was operative at the moment of the injury, he will be held liable therefor, although the injurious result was concurred in and contributed to by the act of, a third person, or inevitable accident. The rule is thoroughly established that where an injury is the product of the combined negligence of two or more persons, such persons are jointly and severally liable to the person injured, and suit may be instituted against one or all of the wrongdoers; though the damage would not have occurred from the negligence of either alone. Starling v. City of Gainesville, 106 So. 424, 106 Fla. 425; Benedict Pineapple Co. v. A. C. L. Ry. Co., 55 Fla. 514, 46 So. 732, 20 L. R. A. (N. S.) 92n; L. & N. R. Co. v. Allen, 67 Fla. 257, 65 So. 8, L. R. A. 1915 c, 20n, 20 R. C. L. 102.

We think it quite probable from the evidence in this case that the negligence of plaintiff's husband contributed to causing the collision and resulting in injury. But, as we have seen, the husband's merely contributory negligence will not be imputed to the plaintiff. Whether the husband's negligence was the sole proximate cause of the injury was, under the evidence in this case, a question for the jury. There was some evidence from which the jury might reasonably have inferred that the defendant was also guilty of some negligence proximately contributing to the causation of the injury, and if this were true the mere fact that the negligence of plaintiff's husband also con-

tributed thereto, would not prevent a recovery. Upon this question, the defendant railway company had the greater number of witnesses. The plaintiff, not being in a position to observe what happened just before the accident, had to rely upon the testimony of her daughter, who was seated on the front seat of the automobile, and the testimony of a Mr. Tryon, a disinterested witness who was standing nearby and observed the accident, plaintiff's husband having died just a few weeks before the trial of this case. There was a sharp conflict in the evidence of these two witnesses for the plaintiff and the several employee witnesses for the defendant upon one or two vital questions of fact, relating to the negligence of the defendant. For instance, Miss Frost and Mr. Tryon testified that the car which struck the automobile (and which was one of three cars being pushed by a switch engine) did not commence to move until the automobile was almost on the track and too late for the driver of the automobile to avoid the collision. Most of the witnesses for the defendant testified that the cars were moving from a point several hundred feet west of the crossing continuously up to the time of the accident. There was evidence for the defendant that it was a rule of the defendant company that all trains should come to a stop before crossing this thoroughfare unless the crossing was being flagged. Defendant's witnesses testified that the crossing was being flagged on this occasion by two employees, but plaintiff's witnesses denied this. Practically all the testimony showed that the driver of the automobile was proceeding over the crossing very slowly, not over eight miles per hour, and Miss Frost testified that as soon as the car on the third track and just to their right, commenced, suddenly and without warning to move, her father, who was operating his automobile in second gear, attempted to shift into reverse gear, but

that it was too late, and the collision resulted. The defendant's witnesses testified that the cut of the three cars being pushed by the engine was moving very slowly and that just before the collision, when it appeared that the automobile was going to come onto the track, the stop signal was given to the engineer and the train was stopped within about eight feet, but too late to avoid the accident. That part of this eight feet was due to the running out of the slack, the air brakes not being connected up. The automobile was crushed by the first car up against the engine standing on the adjoining track just east of the crossing.

Testimony for the plaintiff showed that plaintiff was a kindergarten teacher and had to use her voice to a considerable extent in teaching and in leading her classes in singing. That the most serious result of the accident was an injury to the voice box and vocal cords, and the testimony of physicians was to the effect that this injury was permanent and would make it impracticable for plaintiff to use her voice to any extent in singing any more. Plaintiff testified that she had been a kindergarten teacher for two or three years, that her earnings therefor was $5.00 per month per pupil; that she had been able to teach as high as twenty-five pupils, but because of the injury to her voice, in her last venture in kindergarten teaching, during the month of October preceding the trial, she had been only able to teach some ten or more pupils. This would indicate a monetary loss of $75.00 per month for an average of six months, or $450.00 per year, while the income of the verdict of $12,000.00 at the legal rate amounts to $960.00, or double the amount of such tangible monetary loss, besides leaving the plaintiff the principal sum intact.

In addition to the injuries above mentioned, the testi-

mony showed that plaintiff suffered the breaking of three ribs, laceration of one ear, and other bruises and cuts; that she suffered much pain and was in the hospital for several weeks, and that since the accident her voice had been impaired so as to make talking for any considerable period of time very fatiguing; and that the tone of her voice was not natural, and that she has not been able to perform her usual household duties as efficiently as before.

In charging the jury, the court failed to specify that the future diminution of plaintiff's earning capacity should be reduced to its present value. Upon the question of compensation, the court charged the jury as follows: "Gentlemen of the jury, the measure of damages is the compensation that the plaintiff is entitled to recover to compensate her for the injury suffered by her, the pain and suffering undergone by her, and the diminution, if any, in her earning capacity, both in the past, present and future, if you find that the plaintiff is entitled to recover, and it is only damages that will compensate her that you should award her in the event you find for the plaintiff."

This charge was excepted to by defendant and is assigned as error. This charge is good as far as it goes, but it omitted one element which was not supplied in any other portion of the court's charge to the jury, and the omission of which had a tendency to mislead the jury as to the amount properly recoverable for damaged earning capacity. This Court has laid down the rule that, "In cases where a plaintiff's prospective losses in the future during his life expectancy from the diminished earning capacity consequent upon his injuries is made a ground of recovery, the jury should be instructed that in estimating such prospective future damages resulting from the diminished earning capacity, they should reduce such damages to their *present value,* and that such *present value* thereof only

should be included in their verdict." See opinion of Mr. Justice TAYLOR in F. E. C. Ry. Co. v. Lassiter, 58 Fla. 234, 50 So. 428, 19 Ann. cases 192; also Duval v. Hunt, 34 Fla. 85, 15 So. 876, and Jacksonville Electric Co. v. Bowden, 54 Fla. 461, 45 So. 755.

One of the grounds of the motion for new trial was that the verdict was excessive. Under the evidence in this case we think that this ground had merit. After a careful consideration of the record, we have reached the conclusion that if the plaintiff in the court below will enter a remittitur of 25% of the verdict and judgment in her favor, thus making the amount of the judgment $9,000.00 instead of $12,000.00, the judgment of the court below, as thus modified, will stand affirmed; otherwise, the judgment will stand reversed for a new trial. And it is so ordered.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion.