Donald A. PETERSEN, Administrator of the Estate of Sgt. Russell Lynn Petersen, Deceased, Plaintiff-Appellee-Cross Appellant,

v.

Sgt. Robert M. KLOS, Defendant-Appellant-Cross Appellee.

No. 27427.

United States Court of Appeals, Fifth Circuit.

March 19, 1970.

A. S. Johnston, III, Biloxi, Miss., for appellant.

Sherman Muths, Jr., Gulfport, Miss., Jerome B. Steen, Jackson, Miss., for appellee.

Before GEWIN, COLEMAN and DYER, Circuit Judges.

GEWIN, Circuit Judge:

This wrongful death action was removed to the United States District Court for the Southern District of Mississippi from the Circuit Court of Harrison County, Mississippi. Donald A. Petersen (cross appellant-appellee) sought recovery for the death of his son, Sgt. Russell Lynn Petersen, from Sgt. Robert M. Klos (cross appellee-appellant), the driver of the automobile in which decedent was fatally injured. Klos appeals from the judgment of liability, and Petersen cross appeals from a finding of contributory negligence and the consequent reduction in the award of damages. For reasons to be developed, we affirm the judgment against Klos and reverse the finding of contributory negligence.

At the time of the accident both decedent and Klos were members of the United States Air Force and were stationed at Keesler Air Force Base, Biloxi, Mississippi. The two, along with Darrel Autry, another airman, spent the evening of 31 October 1967 visiting two of the area's drinking establishments. At the Sunset Bar each of the men consumed two bottles of beer in the course of approximately one hour. Klos and Autry testified that they had not been drinking prior to this time and that decedent apparently had not. Around 8:30 p. m. the trio moved on to a nightclub called the Vapors, where they remained until approximately 11:00 p. m. During this period they evenly divided one or two [1] pitchers of beer.

On leaving the Vapors, they returned to the Sunset Bar where Klos had left his car earlier. Decedent then drove Autry, who had become drowsy, home in Autry's car. Klos followed in his own vehicle. Leaving the Autry house, decedent got into the passenger side of Klos's car. Klos testified that he was driving himself and decedent back toward the beach about 11:40 p. m., and that this is the last thing he remembers until awaking in the hospital.

At approximately 12:10 a. m., the Klos vehicle left the two eastbound lanes of the highway on which it had been travelling, and ran into the neutral zone dividing the eastbound and westbound traffic lanes. The car struck a palm tree growing in the median. The impact uprooted the tree and tore the car into several pieces. The larger portion of the vehicle, including the passenger compartment, came to rest after crossing the two westbound traffic lanes. The two policemen who investigated the accident found Klos lying unconscious some five to six feet from the driver's side of the passenger compartment. Decedent was found in the neutral zone 40 to 45 feet east of the point of impact with the palm tree. Klos's injuries were relatively minor, and he was released from the hospital after nine days. Decedent remained comatose until he died on 9 November 1967 from "multiple brain injuries and contusions" received in the accident.

This suit was originally filed in state court under the Mississippi wrongful death statute.[2] With jurisdiction based on diversity, Klos removed the case to the district court where it was tried without a jury. The court found Klos liable for decedent's death and assessed damages at $40,360.00. The court also found that decedent was contributorily negligent in failing to use an available seat belt, and that this negligence equally contributed to the severity and fatality of decedent's injuries. Under Mississippi's rule of comparative negligence,[3] the court entered judgment against Klos in the amount of $20,180.00.

---

1. Klos testified that two pitchers were consumed; Autry said only one.

2. § 1453 Mississippi Code of 1942 Annotated.

3. § 1454 Mississippi Code of 1942 Annotated.

## I

We will initially consider the questions raised by Klos in support of his appeal. Klos contends that: (1) Decedent assumed the risk of his injuries; (2) decedent was guilty of independent negligence which was the proximate cause of his injuries; (3) the doctrine of res ipsa loquitur is inappropriate to the present case.

Klos asserts that by riding in the car, knowing the driver had been drinking, decedent assumed the risk of the fatal accident. The doctrine of assumption of risk is a viable part of the Mississippi jurisprudence [4] which has an Erie grip on this action. We would abstractly agree that it could bar an injured plaintiff from recovery against an inebriated driver.[5] The doctrine was described by this court in Robbins v. Milner Enterprises, Inc.: [6]

> [T]he Mississippi doctrine rests on the basis that "one who knows, appreciates, and deliberately exposes himself to a danger 'assumes the risk' thereof." The essence of the defense is knowledge of the defective condition, conscious awareness or appreciation of the dangers inherent in it, and a voluntary decision to risk likely injury.

At the outset, there must be a "risk" to be appreciated and assumed; and at the conclusion, the plaintiff's injury must have been caused by that specific risk, for the doctrine to bar recovery.[7]

The district court, in effect, found there was no "risk" created by the beer Klos had consumed; hence nothing for decedent to have appreciated or assumed. It also found no causal connection between drinking and the accident. In its opinion the court stated:

> An effort was made to show that the driver of this Plymouth Fury automobile as the defendant here was under the influence of intoxicating liquors. * * * There is no sufficient evidence in this record to enable this Court to say with any confidence or satisfaction that defendant on this occasion was intoxicated, even though he surely had drunk several glasses of beer during the evening.

To sustain Klos's present position, it would be necessary to find the district court clearly erroneous in discounting alcohol as a factor in the accident.[8] The only direct evidence on the question, testimony by Klos and Autry, indicated that none of the trio was drunk, intoxicated, or "under the influence" on the fatal evening. The two investigating officers testified that they did not notice an aroma of beer or other intoxicants while rendering aid to the unconscious men. In attempting to contradict his own testimony on the question, Klos can only point to the erratic behavior of the automobile and his subsequent lapse of memory as evidence of intoxication. The court's finding is amply supported by record evidence.

Klos next contends that decedent was guilty of independent negligence which was the proximate cause of his death. Klos testified that the trip to the beach after leaving Autry's house was prompted by decedent's suggestion that they renew their drinking. He argues that this suggestion, in light of their alleged intoxicated condition, was negligence and the proximate cause of the accident. As noted above, the allegation that the travelers were intoxicated is not supported by the record. The facts also reveal only a remote relationship between decedent's alleged suggestion and his injury. Klos cites no authority relevant to this contention and we can only interpret it as an alternative statement of the assumption of risk theory discussed above.

4. Robbins v. Milner Enterprises, Inc., 278 F.2d 492 (5th Cir. 1960).

5. Saxton v. Rose, 201 Miss. 814, 29 So.2d 646 (1947).

6. 278 F.2d 492, 494 (5th Cir. 1960).

7. *See generally* W. Prosser, The Law of Torts § 55 at 303 (2d ed. 1955).

8. Rule 52(a), Fed.R.Civ.Pro.

■■ Finally, Klos argues that the judgment of liability can not be supported by the doctrine of res ipsa loquitur. The argument is a rejoinder to Petersen's contention that this doctrine can serve as an alternative basis for the court's judgment against Klos. The Court stated in its opinion:

> It is clear to the Court under all of the facts and circumstances and inferences in this record that the defendant on this occasion was negligent in driving this automobile at a rate of speed in excess of the speed limit in the area (forty miles per hour) and in not having his automobile under control and that such negligence was the proximate cause of this accident.

The court nowhere mentions the doctrine of res ipsa loquitur. Eye witness testimony, as well as the terrible damage caused by the impact and all surrounding factors, established the vehicle's high rate of speed. Exceeding the speed limit is negligence per se,[9] which the court could readily conclude was the proximate cause of this accident.[10] There is therefore no occasion to speculate as to whether Petersen could have prevailed under another theory.

## II

The cross appeal in this case disputes the propriety of the district court's finding that the decedent was guilty of contributory negligence in failing to use an available seat belt. Petersen contends that the finding of contributory negligence was improper since: (1) It was not pleaded as required by Rule 8(c), Fed.R.Civ.Pro.; (2) failure to use seat belts is not negligence as a matter of Mississippi law; (3) there was no proof of a causal connection between the failure to use seat belts and the injuries sustained.

■ In Railway Exp. Agency, Inc. v. Mallory,[11] this court observed that the Mississippi comparative negligence statute, "is part of the substantive law of Mississippi and must be followed by the federal court sitting in that State." The court held that a defendant may not have the benefit of this statute unless he pleads the affirmative defense of contributory negligence.[12] However, Rule 15(b); Fed.R.Civ.Pro., provides in part: part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

In the present case, one of the investigating officers testified that there were seat belts in the car; and he stated in equivocal and uncertain terms that apparently the occupants had not used them.[13] Though this was the only testimony on the subject, it was received without objection by Petersen. Petersen contends that his failure to object did not expand Klos's available defenses. In Metropolitan Life Insurance Co. v.

---

9. Terry v. Smylie, 161 Miss. 31, 133 So. 662 (1931); White v. Weitz, 169 Miss. 102, 152 So. 484 (1934).

10. McCorkle v. United Gas Pipe Line Co., 253 Miss. 169, 175 So.2d 480 (1965).

11. 168 F.2d 426, 427 (5th Cir. 1948).

12. Rule 8(c), Fed.R.Civ.Pro., requires that affirmative defenses, including contributory negligence, be set forth affirmatively in the pleadings.

13. The testimony of Officer D. R. Beaulier contains the following:
   Q. This automobile was equipped with seat belts, was it not?
   A. Yes.
   Q. They were not in use at the time of the accident, were they?
   A. It appeared that they were not because they, they were not broken. I checked them and they were not broken. They were just hanging there.
       *       *       *       *       *
   Q. Now, Mr. Johnson, Johnston asked you about whether or not either of these occupants had seat belts? Now, you don't know of your own knowledge whether or not they had them on or not, do you?
   A. No, sir, I do not.

Fugate,[14] this court rejected a similar contention stating:

> Rule 15(b) of course, is applicable to defenses as well as claims, and to the extent to which it is applicable, it operates as an exception to the rule that defenses not pleaded are waived. Moore's Federal Practice, 2d Ed. p. 846. In a given case, the fact that a defense has not been pleaded formally is immaterial if the issue was tried by express or implied consent.

While the evidence relating to the use of seat belts was slight, in the present case, we must conclude that the question was properly before the district court, as an affirmative defense.

█ In finding that the decedent was contributorily negligent, the district court simply stated:

> Significantly, the defendant as the driver of this automobile was not fatally injured.[15] The decedent did not have his seat belt fastened and was thrown from the vehicle very violently and sustained fatal injuries from which he later died. He was thus guilty of contributory negligence.
> \* \* \*

Neither party cites any authority revealing Mississippi's position on the failure to use seat belts as negligence, and our research has added nothing to the vacuum. In this Erie situation the district court was required to hypothesize the state law on a novel question.[16] In such cases, we are reluctant to substitute our view of state law for that of the district court sitting in that state and experienced in its jurisprudence. But, as one commentator has pertinently observed:

> [A] party is entitled to review of the trial court's determination of state law just as he is of any other legal question in the case, and \* \* \* the decision of the local trial judge cannot reasonably be regarded as conclusive.[17]

The district court did not explain the reasoning behind its finding of contributory negligence. It seems that it could have rested on either of two theories: (1) The Mississippi statute requiring installation of seat belts in certain cars imposes a duty to use them, the breach of which was negligence as a matter of law; or (2) the common law imposed the duty in this particular case.

Section 8254.5 of the Mississippi Code of 1942 Annotated makes it a misdemeanor to sell, lease, trade, or transfer automobiles, commencing with the 1963 models, which are not equipped with two sets of seat belts in the front seats. Mississippi does not specifically require the *use* of the seat belts once they are installed. Since 1960, at least thirty-three states and the District of Columbia have enacted similar legislation. To our knowledge, no state requires the use of seat belts in private vehicles.[18] The statutes in Minnesota, Tennessee, and Virginia, while imposing the installation

14. 313 F.2d 788, 795–796 (5th Cir. 1963).

15. We do not understand the significance of this fact as used by the court, inasmuch as Klos was also found outside the car. There was identical evidence that he was not wearing his seat belt. In Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967), the court used a similar comparison between the fate of the driver and the passenger to show a lack of causal connection between the use of seat belts and the injuries sustained.

16. A federal diversity court cannot decline to exercise its jurisdiction even though the state law which it is bound to apply cannot be found with certainty. We therefore fall back on the formulary surrogates to account for our mysterious application of an uncoined code. Thus where the controlling state law eludes the researcher, the court must attempt to ascertain the policy inclination of the state's highest tribunal with regard to the matter in controversy. Failing that, the court may assume that the state courts would adopt the rule which, in its view, is supported by the thrust of logic and authority. Stool v. J. C. Penney Co., 404 F.2d 562, 563 (5th Cir. 1968).

17. C. Wright, Federal Courts § 58 at 206 (1963).

18. Rhode Island makes the use of seat belts mandatory in certain government and public service vehicles.

requirement, specifically provide that the failure to use seat belts is not contributory negligence.[19]

It has been urged that these statutes are meaningless unless the legislative bodies intended the belts to be used, a policy the courts should recognize. However, the Mississippi statute *only* requires the installation of two sets of belts and *only* applies to automobiles of recent manufacture, undercutting the notion that the statute is an absolute safety measure.[20] Considering an almost identical statute, one commentator concluded that the legislature merely intended to make seat belts available and to encourage their development as a safety device.[21] We have found no case implying a statutory duty to use seat belts from such general installation requirements, and we feel it likely that Mississippi would follow the preponderant view, refusing to do so.[22]

An argument that decedent was under a duty to wear his seat belt, imposed by the common law, is fraught with difficulties. Before this new safety device can be said to modify the standard of ordinary care, there must be some consensus as to its utility. There was no evidence before the district court concerning the safety value of seat belts. Research and statistical experience indicates that seat belts are beneficial in most accident situations,[23] though the lap belt has been found to cause rather than prevent injury in certain crash conditions.[24]

In spite of statistics, expert opinion, and safety campaigns, there is indication that the general motoring public still does not consider seat belts a necessary accountrement of safe driving.[25] As noted by one commentator:

> The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise the court would be imposing a standard of conduct rather than applying a standard accepted by society.[26]

Yet another problem was recognized by the Supreme Court of North Carolina in Miller v. Miller.[27] The court observed that, excluding the most bizarre circumstances, "there are no standards by which it can be said that the use of seat belts is required for one trip and not for another," since a motorist ordinarily must engage the seat belts before the imminent danger of an accident is apparent. If a duty to use seat belts is recognized, it must then be an absolute duty, not dependent on the circumstances of a particular accident. As the *Miller* court noted, no court has as yet

19. Minn.Stat. § 169.685, subd. 2 (1964); Tenn.Code Ann. § 59–930 (1964); Va. Code Ann. § 46.1–309.1(b) (Supp.1966).

20. *See* Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65, 68 (1968).

21. Note, Seat Belt Negligence in Automobile Accidents, 1967 Wis.L.Rev. 288, 290–91.

22. Turner v. Pfluger, 407 F.2d 648 (7th Cir. 1969); Robinson v. Bone, 285 F. Supp. 423 (Or.1968); Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 (1968); Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967); Cierpisz v. Singleton, 247 Md. 215, 230 A.2d 629 (1967). *See* Lentz v. Schafer, 404 F.2d 516 (7th Cir. 1968); Wood v. Smith, 296 F.Supp.

1128 (N.D.Fla.1969); Brown v. Kendrick, 192 So.2d 49 (Fla.App.1966); 15 A.L.R.3d 1428 (1967).

23. *See* Note, Seat Belt Negligence in Automobile Accidents, 1967 Wis.L.Rev. 288, 282–93.

24. *See* Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65, 69–70 (1968).

25. This is established by the fact that the average man does not use his seat belts. *Id.* at 69.

26. Note, Seat Belt Negligence in Automobile Accidents, 1967 Wis.L.Rev. 288, 297.

27. 273 N.C. 228, 160 S.E.2d 65, 70–71 (1968).

held the failure to use seat belts to be negligence *per se*. Some courts have concluded that the question requires arbitrary resolution and commends itself to the legislative body for determination as a question of public policy.[28]

■ However, we need not attempt to infer how Mississippi courts would decide the question, since we find no support in the record for the finding of a causal connection between the alleged negligence and the fact or severity of decedent's injury. Of course, the fact that decedent was not buckled into his seat, did not contribute to the occurrence of the collision. The fact that decedent was apparently thrown from the vehicle on impact is the only evidentiary link between his failure to use seat belts and the severity of his injury. We can not consider this a sufficient basis for the implied conclusion that his injuries would not have been fatal had seat belts been in use. Photographs of the wrecked automobile, contained in the exhibits, reveal extensive damage to the passenger side. There is no reason to assume that decedent would have survived had he remained inside the car, or that the fatal injuries were not in fact received before he was thrown clear. Klos, who was also found outside the car, was not fatally injured.[29] We must conclude that the district court's finding of a causal connection between decedent's failure to use his seat belts and the severity of his injuries is clearly erroneous.

Accordingly, the judgment of the district court is reversed and the case remanded. The district court is directed to enter judgment for the plaintiff in the amount of $40,360.00 as previously determined by that court.

Reversed and remanded with directions.

28. Lipscomb v. Diamiani, 226 A.2d 914 (Del.Super.1967); Brown v. Kendrick, 192 So.2d 49 (Fla.App.1966).