GLICKSTEIN, Judge.
This is an appeal from a final judgment following a defense verdict for appellees in a negligence action. We affirm.
On April 16, 1978, Clara Ploetz was injured while shopping with her husband, Paul, for wood paneling in Big Discount Panel Center’s place of business. In her complaint she alleged that the store was negligent “in stacking large and heavy plywood panels against its wall near the doorway to the premises and in an area where many patrons would walk or stand, in a nearly vertical position so that several of these panels tumbled over and violently fell on [her]. . . . ”
At the trial, Mrs. Ploetz was unable to give any relevant facts about the placement of the panels that fell on her because her back was to the panels. However, her husband testified in detail. He first said that he took one sheet of the plywood paneling and stacked it outside of the premises near the doorway, then backed his automobile up to the premises. He described the paneling as four feet in width and eight feet in height. According to him, there was no *65 panel rack inside of the doorway in which to stack panels. He further testified that the store’s personnel stacked the selected paneling at the doorway so that about twenty inches of the four foot width was actually outside. As he was moving his automobile, Mr. Ploetz saw the panels move forward and backward two times. He called to his wife to watch out. At that point the panels fell, striking Mrs. Ploetz.
Mrs. Harvey, who was working with her husband at the store, testified that the panels which fell on Mrs. Ploetz were stacked, lengthwise, up against panel racks inside of the doorway. Her husband, Mr. Harvey, testified that he rested the panels against the panel rack and that none of the panels were partially outside, as Mr. Ploetz had testified. The proprietor described the panel rack as an A frame with two arms that come out across the top which holds the panels in. Over appellant’s objection the following question and answer of Mr. Harvey were permitted:
Q. (By Ms. Sonneborn) Mr. Harvey, in your experience with Weyerhaeuser, when you were going from store to store, did you have an opportunity to observe whether it is the customary practice to secure the panels in the panel rack in any manner other than just placing them in the panel rack while in the process of loading a customer’s car?
A. No, I would say it is not even customary to secure them in the racks while they are on display. Normally the racks are built to where the weight of the panels hold them in the rack and, like I said, most of these people that build their own displays and A frames do not use the arms that are on the display racks that we use, and therefore do not use any panel clips because there would be no place to clip them on.
Mr. Zammit was called at trial as a witness for appellee. He was in the same business as appellee and testified that the majority of the stores in the area use an A frame for paneling to be displayed upright. Over appellant’s objection, Mr. Zammit was asked the following question:
In your experience in your own store and your observation of other stores, is it the customary practice to secure the panels into the A frame panel rack by any method when you are temporarily stacking them there, when you are in the process of loading them into a customer’s car?
He answered:
I don’t believe it would be customary to confine them.
Appellant’s first point is that the trial court erred in allowing Messrs. Harvey and Zammit to testify as to whether or not it was customary to secure panels in the panel racks when the panels were being loaded for a customer. We have considered all of appellant’s arguments on this point and believe that the rule articulated in Sea Board Air Line Ry. Co. v. Watson, 94 Fla. 571, 113 So. 716, 718 (1927) applies. In that case the supreme court said:
It would seem to us that the proper rule . . . would be, in cases where the method used was not clearly and inherently negligent or dangerous, to admit evidence of the general custom of others engaged in the same kind of business or occupation, as to the particular method under investigation, for the consideration of the jury for whatever light it might throw upon the question as to whether or not the method used was or was not negligent under the circumstances of the particular case, but not to any extent whatever as conclusive of the question. There is a common sense and reasonable basis for the contention that what is ordinarily and usually done by men generally, engaged in the same work, has some relevancy to the inquiry as to what an ordinarily prudent person would do under the same circumstances.
Accordingly, appellant’s objections were properly overruled.
Appellant argues in her second point that she was entitled to a jury instruction on res ipsa loquitur. The Florida Supreme Court described the doctrine as one of extremely limited applicability that had been improperly extended beyond its intended perimeters.
Res ipsa loquitur — “the thing speaks for itself” — is a doctrine of extremely *66 limited applicability. It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially, the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control.
Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339, 1341-1342. Sub judice, appellant alleged in her complaint specific acts of negligence and submitted at trial direct proof of negligence by the testimony of her husband. As indicated above, he testified that he had observed that the wood panels that fell and struck appellant, allegedly causing injury to her, were stacked approximately half in and half out of the premises and that they had moved forward and backward twice before falling. Accordingly, the trial court properly denied the requested instruction. Benigno v. Cypress Community Hospital, Inc., 386 So.2d 1303, 1304 (Fla. 4th DCA 1980).
AFFIRMED..
MOORE and BERANEK, JJ., concur.