425 So.2d 1141 (1982)
INSURANCE COMPANY OF NORTH AMERICA and John Menninger, Appellants,
v.
Richard D. PASAKARNIS and Lucille Mekjian, Appellees.
No. 80-1895.
District Court of Appeal of Florida, Fourth District.
December 15, 1982.
Rehearing Denied February 9, 1983.
Marjorie D. Gadarian of Jones & Foster, West Palm Beach, and Robin A. Lloyd, Sr. of Jones, Foster & Moss, Vero Beach, for appellants.
James C. Gavigan of Hoadley & Gavigan, West Palm Beach, for appellees.
Larry Klein, West Palm Beach, for amicus curiae  The Academy of Florida Trial Lawyers.
LETTS, Chief Judge.
This cause is affirmed upon the authority of Lafferty v. Allstate Insurance Company, 425 So.2d 1147 (Fla. 4th DCA, Case No. 81-279, opinion filed December 15, 1982).
*1142 GLICKSTEIN, J., concurs.
SCHWARTZ, ALAN R., Associate Judge, dissents with opinion.
SCHWARTZ, ALAN R., Associate Judge (dissenting).
The question in this case is whether a plaintiff's failure to fasten his seat belt, when coupled with competent expert evidence that it contributed to the extent of the injuries he sustained in an automobile accident, may be considered by the jury as an aspect of the defense of comparative negligence. Contrary to the ruling on this point below, I would hold that the "seat belt defense" indeed exists in Florida and therefore reverse the judgment under review.[1]
The inherent difficulty of resolving this important issue is eased somewhat by the purity of the factual posture in which it is presented. The plaintiff Pasakarnis was involved in an intersection accident near Stuart caused when the defendant Menninger ran a stop sign. Pasakarnis was driving a jeep which he acknowledgedly knew was a relatively unstable vehicle; notwithstanding this fact, he stated that he had deliberately chosen not to fasten the fully operational seat belt with which it was equipped. There was substantial evidence that this decision had serious consequences. When the collision occurred, the jeep was flipped over and Pasakarnis was hurled from the vehicle. He landed on his posterior, sustaining a compression-type injury of his lower back. By deposition, an expert engineer-accident analyst stated that if the seat belt had been fastened, the plaintiff would have remained inside the vehicle and would have been injured only slightly, if at all. In granting the plaintiff's pre-trial motion to that effect, however, the trial court ruled that the failure to use the seat belt was legally irrelevant and that evidence concerning it would not be submitted to the jury. After a trial which consequently concerned only the issues of liability for the collision and resulting damages, the plaintiff won a verdict and judgment of $100,000 for his back injury. I agree with the defendants' primary contention on this appeal[2] that the seat belt ruling was erroneous.
Because the question of whether to buckle one's seat belt  which is faced as a practical matter and issue by virtually every person on virtually every occasion he gets into a motor vehicle  is one of such overwhelming universality, its consequences have been the subject both of numerous scientific studies and of countless and diverse commentaries and decisions. See, Mount v. McClellan, 91 Ill. App.2d 1, 234 N.E.2d 329 (1968); Barry v. Coca Cola Co., 99 N.J. Super. 270, 239 A.2d 273 (1967); Glover v. Daniels, 310 F. Supp. 750 (N.D.Miss. 1970); Kircher, The Seat Belt Defense  State of the Law, 53 Marq.L.Rev. 172 (1970); Snyder, The Seat Belt as a Cause of Injury, 53 Marq.L.Rev. 211 (1970); Pollock, The Seat Belt Defense  A Valid Instrument of Public Policy, 44 Tenn.L.Rev. 119 (1976); Timmons & Silvas, Pure Comparative Negligence in Florida: A New Adventure in the Common Law, 28 U.Miami L.Rev. 737, 775 (1974); Roethe, Seat Belt Negligence in Automobile Accidents, 1967 Wis.L.Rev. 288; Annot.  Nonuse of Seat Belt as Failure to Mitigate Damages, 80 A.L.R.3d 1033 (1977); Annot.  Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence, 92 A.L.R.3d 9 (1979); Annot.  Nonuse of Automobile Seatbelts as Evidence of Comparative Negligence, 95 A.L.R.3d 239 (1979). There is no need to *1143 reproduce the competing arguments here. It is enough to say as a starting point that it seems clear to me that the failure to expend the minimal effort required to fasten an available safety device which has been put there specifically in order to reduce or avoid injuries from a subsequent accident is, on the very face of the matter, obviously pertinent and thus should be deemed admissible in an action for damages, part of which would not have been sustained if the seat belt had been used. This very practical viewpoint is the essential basis of those decisions which, as I would do, have accepted the viability of the "seat belt defense." Melia v. Ford Motor Co., 534 F.2d 795 (8th Cir.1976); Mays v. Dealers Transit, Inc., 441 F.2d 1344 (7th Cir.1971); Henderson v. United States, 429 F.2d 588 (10th Cir.1970); Caiazzo v. Volkswagenwerk, A.G., 468 F. Supp. 593 (E.D.N.Y. 1979), modified on other grounds, 647 F.2d 241 (2d Cir.1981); Wilson v. Volkswagen of America, 445 F. Supp. 1368 (E.D. Va. 1978); Pritts v. Walter Lowery Trucking Co., 400 F. Supp. 867 (W.D.Pa. 1975); Benner v. Interstate Container Corp., 73 F.R.D. 502 (E.D.Pa. 1977); Uresky v. Fedora, 27 Conn.Sup. 498, 245 A.2d 393 (1968); Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974); Sams v. Sams, 247 S.C. 467, 148 S.E.2d 154 (1966); Sonnier v. Ramsey, 424 S.W.2d 684 (Tex. Civ.App. 1968); Hernke v. Coronet Ins. Co., 72 Wis.2d 170, 240 N.W.2d 382 (1976); Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967).
When, notwithstanding what I thus think is the common sense of the matter, the seat belt defense has been rejected, this has occurred only when courts have discovered and applied one or more of a variety of policy reasons against, or legal impediments to its acceptance. This has been true in Florida in which the presently leading case is Brown v. Kendrick, 192 So.2d 49 (Fla. 1st DCA 1966)[3] which, citing several such factors, declined to recognize the defense. Largely because of significant changes and developments in the law since Kendrick, I not only agree with the first district's own recent observation that the arguments against the defense are "troublesomely unconvincing," Selfe v. Smith, 397 So.2d 348, 351 (Fla. 1st DCA 1981), but would directly hold that no acceptable reason exists for the continued rejection of the appellant's position.
1. The subsequent adoption of the comparative negligence doctrine in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) has eliminated the inequitable harshness inherent in the contributory negligence model, under which the plaintiff would be precluded from recovery of any damages  even those incurred in the initial accident in which, as here, he may not have been at all at fault  simply because he was negligent in not minimizing the extent of the damages he sustained only after it occurred. Moreover, the Florida formulation of the comparative negligence rule as relating to whether any negligence of the plaintiff was a legal cause, not of the accident, but of his "damages," "loss" or "injury," see Hoffman v. Jones, supra, 280 So.2d at 439; Lawrence v. Florida East Coast R. Co., 346 So.2d 1012 (Fla. 1977); Fla.Standard Jury Instructions (Civil), Model Charges Nos. 1 & 2 (1981), completely obviates the theoretical obstacles many courts have found in applying principles of avoidable consequences or mitigation of damages, which are usually thought to concern only the plaintiff's conduct after the accident, and which would therefore exclude the pre-accident failure to buckle up.[4] See W. Prosser, Law of *1144 Torts § 65 (4th ed. 1971). Accordingly, several courts have either held that the seat belt defense is a good one under newly-adopted comparative negligence principles, Bentzler v. Braun, supra, or strongly hinted that it would become so when the doctrine became effective in that jurisdiction. Fischer v. Moore, 183 Colo. 392, 517 P.2d 458 (1973); Horn v. General Motors Corp., 17 Cal.3d 359, 131 Cal. Rptr. 78, 551 P.2d 398 (1976).
2. The claim that a "veritable battle of experts" on the issue of causation, see Amend v. Bell, 89 Wash.2d 124, 570 P.2d 138 (1977) would result from a recognition of the seat belt defense is perhaps best met by a response of "so what?" There is no reason whatever why the jury cannot be entrusted with weighing expert opinions on this, as it is on so many other complex issues.[5]
3. The argument that, apparently as a matter of law, a driver or passenger need not anticipate and guard against an accident and the consequences of an ensuing "second collision," see Amend v. Bell, supra, is similarly totally without substance. Indeed, it is so commonly known that automobile accidents must be anticipated that the necessity of exercising reasonable care to minimize their effects forms the basis of an entire body of products liability law, as established in Florida since Brown v. Kendrick. Ford Motor Co. v. Hill, 404 So.2d 1049 (Fla. 1981); Ford Motor Co. v. Evancho, 327 So.2d 201 (Fla. 1976); Nicolodi v. Harley-Davidson Motor Co., 370 So.2d 68 (Fla. 2d DCA 1979). The most basic principles of evenhandedness preclude the imposition of a different standard of foreseeability depending on which party asserts it.[6]
4. The objection to judicial recognition of the seat belt defense which I consider last is at once the most difficult and the one as to which it must be acknowledged there has been no decisional or statutory change since it was relied upon in Kendrick. It is, simply stated, that the matter is not for the courts, but the legislature. More elaborately, the line of reasoning is that just because the issue of whether one must buckle up is both so common and so simple, it should be the subject of a state-wide standard of conduct applicable to all our citizens; since the only body properly capable of enacting such a rule and with the technical resources to draw upon in making the decision has not acted, we should not do so ourselves.[7] *1145 While I surely do not denigrate the force of this position, for several reasons, I cannot accept it.
(a) First, it is to be noted that the legislature has enacted no statute either way on the subject. In contrast, several states[8] have specifically provided that the failure to use required seat belts is not to be considered negligence. Florida's silence on the issue may therefore be taken, not as a declaration that the defense may not be recognized, but rather as one that the issue should be determined within the judicial process. Moreover, the legislature may also simply have been unwilling to make the nonuse of a seat belt the subject of any penalty by enacting a traffic or other statute forbidding it, without meaning to preclude the issue from jury consideration. Thus, the fact that it has passed no law is hardly conclusive even of the legislature's intent concerning the question.
(b) Taking a broader approach, it is certainly the law that the mere nonexistence of a statute forbidding or requiring a particular act or omission does not prevent a jury from concluding that it constitutes a departure from what is reasonably required under the circumstances and is therefore negligent. Restatement (Second) of Torts § 285 (1965). See Lollie v. General Motors Corp., 407 So.2d 613 (Fla. 1st DCA 1981); Buckner v. Allergan Pharmaceuticals, Inc., 400 So.2d 820 (Fla. 5th DCA 1981). This principle has found special application in product liability cases, see, e.g., Raymond v. Riegel Textile Corp., 484 F.2d 1025 (1st Cir.1973); Buckner v. Allergan Pharmaceuticals, Inc., supra; Blasing v. P.R.L. Hardenbergh Co., 303 Minn. 41, 226 N.W.2d 110 (1975), and, even more pointedly, in determining whether motor vehicles should be equipped by a defendant-manufacturer with particular safety devices even though they are not mandated by statute or regulation. Stonehocker v. General Motors Corp., 587 F.2d 151 (4th Cir.1978); Roberts v. May, 41 Colo. App. 82, 583 P.2d 305 (1978); Turner v. American Motors General Corp., 392 A.2d 1005 (D.C. 1978); Lubbock Manufacturing Co. v. Perez, 591 S.W.2d 907 (Tex. Civ.App. 1979). Reverting to a now-familiar theme, it is not justifiable to hold differently when the plaintiff's conduct in failing to employ just such a device is in question.
(c) The final but, I believe, most decisive reason for rejection of the "leave it to the legislature" argument is that its acceptance would result in precisely the evil it is supposed to prevent. A holding that the seat belt question can never go to the jury would itself be a determination that the device never need be fastened, even though there is no statute which so provides.[9] Not only would this amount to just the kind of state-wide "legislation" which, it is said, we do not and should not have the power to enact, I am far from convinced that it represents a wise policy. It would embody a conclusion that it is reasonable to disregard the seat belts we are importuned by official and non-official agencies alike to employ *1146 for our own safety and which the law requires to be available for that very purpose, see Dullanty v. Smith, 203 Cal. 621, 265 P. 814 (1928) (statute requiring vehicle to be equipped with horn implies duty to use horn when appropriate), with the effect that the plaintiff may recover and the defendant must pay for damages which the use of that device would have prevented. I am unwilling to enshrine that determination as an immutable part of our law. As is most cogently demonstrated by Hoffman v. Jones itself, the courts of this state have not been prone to abdicate their judicial responsibilities to what is essentially no more than legislative inaction. Particularly in view of what I perceive is the undesirable result of such a process in this case, I would decline to do so here.
Of course, I likewise reject  and the defendants do not argue otherwise  the adoption of the directly contrary rule that failure to buckle up is negligence per se, leaving only causation for the trier of fact. Such a course would partake of the same vice of legislation as the absolute rule of non-liability I have already rejected. Moreover, I could not in good conscience hold that it is necessarily negligent to fail to fasten one's seat belt. It is common knowledge that, for whatever reason, the vast majority of people do not use their seat belts. This fact is, in itself, an admissible indication that reasonable care does not require that it be done.[10]Sea Board Air Line R. Co. v. Watson, 94 Fla. 571, 113 So. 716 (1927); Florida East Coast R. Co. v. Lassiter, 59 Fla. 246, 52 So. 975 (1910) (contributory negligence); St. Louis-San Francisco R. Co. v. White, 369 So.2d 1007 (Fla. 1st DCA 1979), cert. denied, 378 So.2d 349 (Fla. 1979). In addition, since there are sincerely-held conflicting views as to the merits of seat belts and whether they might under some circumstances cause even more serious injury, a decision not to use them might well be found a reasonable one.
Since not using a seat belt may not therefore be deemed either negligent or non-negligent as a matter of law, it is necessarily a matter of fact, to be determined in each instance by the trier of fact, the jury. Committing the resolution of this question to the jury comports with the accepted principle that it is uniquely its role to determine whether a specific safeguard is required in discharge of a duty of reasonable care, here, the one to provide for one's own safety. Acme Electric, Inc. v. Travis, 218 So.2d 788 (Fla. 1st DCA 1969), cert. denied, 225 So.2d 917 (Fla. 1969); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980). Because of the nature of this particular issue, each jury passing upon it would be serving as a representative of the community, possessing its common experience and knowledge  and thus as a mini-legislature  in determining whether society expects that a reasonable person should fasten his belt. In this respect, the jury would be performing one of its most basic and historically important functions  though one which has been pushed into undeserved obscurity by the welter of statutes and administrative regulations, not to mention judge-made rules of law, which have overwhelmed modern life. See generally, Restatement (Second) of Torts § 285(d); W. Prosser, supra, § 37; 2 F. Harper & F. James, Law of Torts § 17 (1956). Like the court in Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 (1968), I recognize that, in contrast to the usual situation in which the requirements of reasonable care vary from case to case according to changing circumstances, one must ordinarily determine to use a seat belt only when he enters the vehicle, so that the failure to do so either is or is not negligent  determined as an absolute, yes or no, proposition. Thus, different juries may, indeed undoubtedly will, reach completely opposite *1147 decisions on precisely the same issue and operative set of facts  some finding it negligent not to use the belt, some concluding otherwise.[11] This presents no reason, however, for holding that juries should not decide the issue. Apart from the fact that, as we have seen, the alternatives are unacceptable, the likelihood of divergent jury decisions on the same question proves only that jurors are not computers, but human beings, and that the jury system is a human institution. Not only, to put it negatively, has no better system been devised, I think it affirmatively right and proper that this quintessentially human controversy should be resolved in this way.[12]
Finally, I would re-emphasize that, like all other negligence issues, the "seat belt defense" may be submitted only when there is also competent evidence that the failure to use it bore a causal relation to the plaintiff's injuries. Compare, Eichorn v. Olson, 32 Ill. App.3d 587, 335 N.E.2d 774 (1975), and cases cited; Brown v. Kendrick, supra. Since there was such evidence in this case, the judgment below should be reversed for a new trial on the sole issue of whether, and to what degree, the plaintiff was comparatively negligent in failing to fasten his seat belt.[13]
BY ORDER OF THE COURT:
We deny the motion for rehearing, however, recognizing the question as one of great public importance and conscious of the fact that this court certified the identical question in the companion case of Lafferty v. Allstate Insurance Company, 425 So.2d 1147, (Fla. 4th DCA) we hereby certify the following question to the Supreme Court:
SHOULD FLORIDA COURTS CONSIDER SEAT BELT EVIDENCE AS BEARING ON COMPARATIVE NEGLIGENCE OR MITIGATION OF DAMAGES?
NOTES
[1] As was noted in a similar situation in Maszewski v. Piskadlo, 318 So.2d 226, 228, n. 1 (Fla. 2d DCA 1975) (Schwartz, A.J., dissenting), it is all-too-apparent that this opinion was originally written as one for the court. After its submission, however, the opinion in Lafferty was prepared and won the support of the majority in this case. The melancholy process of converting this opinion from a clarion statement of the law to one of lonely dissent then followed.
[2] They also complain that the investigating state trooper was allowed to testify as to the speed and direction of the vehicles before they collided, as well as to the point of impact. Because it was virtually undisputed, however, that the defendant simply ran the stop sign, the admission of the evidence, if arguendo error at all, could have been no more than harmless.
[3] Other Florida cases which discuss the subject are Chandler Leasing Corp. v. Gibson, 227 So.2d 889 (Fla. 3d DCA 1969), which noted that the issue had not been raised in the pleadings (and pointed out that the defendants would have been met with the Kendrick holding if it had), and Quinn v. Millard, 358 So.2d 1378, 1384-85 (Fla. 3d DCA 1978), where the court likewise declined to pass on the merits since, like so many other cases  notably including Brown v. Kendrick itself, but not this one  there was no evidence of a causal connection between the claimant's injuries and his failure to fasten the seat belt. Neither decision is directly contrary to the position I would adopt here.
[4] It is for this reason that I fail completely to perceive the problem which the Lafferty opinion seems to find in the form of the standard comparative negligence jury interrogatories. If, however, there is some need to draw a distinction between one's negligent contribution to the accident, on the one hand, and to his injuries or damages, on the other, the obvious solution would seem to be the simple addition of another interrogatory which would elicit this information. It will not do, in my opinion, to treat the special verdict forms, which are merely advisory anyway, as a sort of procrustean bed which must be accommodated even at the expense of lopping off the limbs of what we would otherwise conclude about the substantive law. We should adopt the exact opposite of this process.
[5] As in this very case, see n. 2, supra, expert opinion is very often, quite necessarily, and perfectly properly relied upon to substantiate the plaintiff's burden of proof. E.g., Ford Motor Co. v. Hill, supra; Ford Motor Co. v. Evancho, supra; Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981). It would be no less than wrong to hold that the necessity of such reliance precludes the other side from advancing an otherwise cognizable claim in defense.
[6] It has also been said, e.g., Amend v. Bell, supra, that since seat belts are not present in all vehicles, a defendant should not be able to take advantage of their existence in the plaintiff's. I consider this contention so fallacious as to be unworthy of reply, or even of inclusion in the body of this opinion.
[7] The argument is extremely well-made in Petersen v. Klos, 426 F.2d 199 (5th Cir.1970):

An argument that decedent was under a duty to wear his seat belt, imposed by the common law, is fraught with difficulties. Before this new safety device can be said to modify the standard of ordinary care, there must be some consensus as to its utility. There was no evidence before the district court concerning the safety value of seat belts. Research and statistical experience indicates that seat belts are beneficial in most accident situations, though the lap belt has been found to cause rather than prevent injury in certain crash conditions.
In spite of statistics, expert opinion, and safety campaigns, there is indication that the general motoring public still does not consider seat belts a necessary accoutrement of safe driving. As noted by one commentator:
The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise the court would be imposing a standard of conduct rather than applying a standard accepted by society.
Yet another problem was recognized by the Supreme Court of North Carolina in Miller v. Miller [273 N.C. 228, 160 S.E.2d 65]. The court observed that, excluding the most bizarre circumstances, `there are no standards by which it can be said that the use of seat belts is required for one trip and not for another,' since a motorist ordinarily must engage the seat belts before the imminent danger of an accident is apparent. If a duty to use seat belts is recognized, it must then be an absolute duty, not dependent on the circumstances of a particular accident. As the Miller court noted, no court has as yet held the failure to use seat belts to be negligence per se. Some courts have concluded that this question requires arbitrary resolution and commends itself to the legislative body for determination as a question of public policy. [citing, inter alia, Brown v. Kendrick, supra; footnotes otherwise omitted]
426 F.2d at 204-05. The Petersen court did not, however, resolve the issue it posed so well, since there was no evidence of causation. 426 F.2d at 205. See note 3, supra.
[8] Minn. Stat. § 169.685, subd. 2 (1964); Tenn. Code Ann. § 59-930 (1964); Va. Code Ann. § 46.1-309.1(b) (Supp. 1966).
[9] Compare statutes cited in note 8, supra.
[10] The exception to this rule, which arises when a customary practice is inherently or unquestionably dangerous and impermissible, see Atlantic Coast Line R. Co. v. Webb, 112 Fla. 449, 150 So. 741 (1933); W. Prosser, supra, § 33, plainly does not apply to this situation. Contrariwise, however, the mere adherence to even universal custom does not alone establish that reasonable care has been exercised. Sea Board Air Line R. Co. v. Watson, 94 Fla. 571, 113 So. 716 (1927); The T.J. Hooper, 60 F.2d 737 (2d Cir.1932), cert. denied, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1933).
[11] It should be pointed out that the same is true of jury determinations as to whether a vehicle or other product should be designed or equipped in a particular manner. W. Prosser, supra, § 96. This fact has surely not precluded the imposition of defendants' liability on these theories, and, again by the same token, should therefore not preclude jury consideration of a defense which has the same characteristics.
[12] I remain singularly unterrified by the parade of horribles conjured up by the Lafferty opinion as the possible result of the adoption of my view on this question. It is no less than self-evident that, as a matter of law, it is not negligent to ride in a subcompact car, to invent the wheel, etc., etc. The same is not true, as I have labored to show, of the present issue.
[13] Thus, the $100,000 already assessed would be reduced by any percentage of comparative negligence found by the jury in the new trial.