# Ivey *v.* City of Birmingham.

## *Damages for Personal Injury.*

(Decided November 7, 1914.  Rehearing denied December 17, 1914.
67 South. 506.)

1. *Dedication; Platting Land.*—Where there was no acceptance by the public, an owner of land cannot impose his dedication of a street upon the public by platting the territory and disposing of lots according to the plat.

2. *Same; Acceptance; User.*—The acceptance of the dedication of a street by platting may be shown by long, continued user by the unorganized public as a right, and the length of time of such user, from which an acceptance may be implied, does not depend on the law governing prescription, but is controlled entirely by the circumstances of each case; the main question being whether the public convenience would be materially affected by the denial of the enjoyment.

3. *Municipal Corporations; Streets; Bringing Highway in; Care.*—Where a way has been completely impressed with the character of a highway before its annexation to a city, the municipal authorities, by bringing it within the corporate limits of the city and leaving it open for travel, become bound to exercise reasonable care to keep it in a safe condition for travel.

4. *Same; Defects; Instructions.*—A charge that a city was under duty to keep a highway brought within the city limits in repair, etc., was not erroneous in that the highway might be a private way, since the term "highway" imports a public way.

5. *Same; Ditch.*—A ditch in a street is a defect for which the municipality is chargeable under the statute.

6. *Same; Improvement.*—The fact that the public authorities improved a part of the highway brought within the corporate limits, and assessed the cost to the abutting owners of property, is prima facie evidence of an adoption of the highway within the limits as a street.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by John B. Ivey against the City of Birmingham for damages suffered by reason of a ditch being left open and unguarded. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Charge 1, refused to plaintiff, is as follows: A city, by bringing a highway within its corporate limits and

leaving it open for public travel, becomes bound to use ordinary care to maintain it in a reasonably safe condition for such travel.

The following is charge 20, given for defendant: Even though you believe from the evidence that the city passed an ordinance providing for the construction of certain street improvements, to wit, sidewalk, curb, and gutter, grading and macadamizing that part of Thirty-Fourth street from Clairmont avenue, to Willow avenue, and that the city let a contract and constructed such improvement between said point, and for 100 feet north of Willow avenue graded or smoothed off Thirty-Fourth street, and even though you further believe that the city assessed the cost of making such improvement against the abutting property owners, this without more would not constitute an acceptance of that part of Thirty-Fourth street lying between the Georgia Road and Hill avenue, and would cast no duty on the city to repair or keep in repair that part of Thirty-Fourth street north of Hill avenue.

The following is the abstract of the evidence offered:

Plaintiff introduced evidence in said cause on the trial thereof tending to show that on the 5th day of October, 1912, after night, he disembarked from a street car at the corner of Thirty-Fourth street and avenue F, which street car at that point ran along Avenue F, sometimes called Georgia Road, and that plaintiff's destination was the residence of a family living on the west side of Thirty-Fourth street in the block next south of Avenue F; the avenues in said city, according to its regular plan, being named by the name of the letters of the alphabet, beginning with A, and running south consecutively to and beyond the letter G; that said Thirty-Fourth street, according to the plan of said city of Birmingham, crossed the whole of said city from

north to south, and that the crossing of said Thirty-Fourth street and Avenue F was open to vehicles at the time of said accident, though it was rough; that from the said street car on Avenue F plaintiff started south along the west side of Thirty-Fourth street on a path or sidewalk regularly used by pedestrians; that he inquired of the people living in the house on the corner of said Avenue F and Thirty-Fourth street as to the residence of the family whose residence he was seeking, and was told that they lived a few doors south, whereupon plaintiff continued walking up the west sidewalk or path in said Thirty-Fourth street, being the western edge thereof, and while so walking in the dark, the said street not being lighted up at all, he fell into a deep ditch, which he did not know existed, he having never been in that neighborhood before, and in consequence of the fall received the injuries and damages set out in the complaint. The ditch was from 7 to 15 feet deep and 4 to 5 feet wide, and ran parallel to and about 4 feet from the western property line on the western margin of said Thirty-Fourth street and adjoining or within a few inches of the eastern margin of said path or sidewalk. The point where plaintiff fell into the ditch was about 25 feet southward from the south line of Avenue F, and between Avenue F and Avenue G as extended, but Avenue G, though cut through on both sides of that block, was not cut through or extended through that block.

Some 23 years before plaintiff was injured on the occasion complained of George C. Arrington, whom the evidence tended to show was then owner of the property including said block, had said property surveyed, mapped, and plotted, and had filed said map for record in the office of the probate judge of Jefferson county, marking the streets, avenues, and alleys thereon in-

cluding said Thirty-fourth street, from said Avenue F
southward through said block and beyond, and had had
said plot and may legally recorded after acknowledging
the same, and had the surveyor's certificate, as required
by law, put upon same; said map having been filed as
aforesaid 23 years before said accident. From that time
to the time of said accident said Thirty-fourth street,
through said block had been used by the public at all
times, by pedestrians and wagons, and as automobiles
came into use by automobiles; but the traffic thereon
was very limited in number. There was evidence tend-
ing to show that Thirty-Fourth street, from Hill ave-
nue, to Avenue F, was impassable, and that vehicles
could not go up and down; and that at the time of said
dedication the said plot was not in the city of Birm-
ingham, but was contiguous thereto, but long before,
to wit, two years before, said accident the city of Birm-
ingham extended its corporate limits, so that same in-
cluded said plot including said Thirty-Fourth street
in said block; that said ditch existed to the depth of
several feet in said Thirty-Fourth street at the time of
the extension of said corporate limits so as to include
said Thirty-Fourth street therein, but that it was at
said time not nearly so deep, but gradually from the
washing of rains got deeper and deeper; that said ditch
was not, on the occasion of said injury, or had not been
at any time, lighted or guarded; that, vehicles used
as a driveway that part of said Thirty-Fourth street
in said block between the said ditch and the eastern
edge of said Thirty-Fourth street; that on the west-
ern side of said Thirty-Fourth street, facing said street
and facing east, there were nine residences in said
block, all the lots being built upon; that on the east-
ern side of said street, facing west, there were but two;
that all of these houses, but one, had been built and

used as residences for many years, and for several years before the corporate limits were extended to include them, which was done, as stated, about two years prior to said accident; that the grade of said Thirty-Fourth street, going south from said Avenue F towards Avenue G, if extended, would cross, was quite steep; that about 100 feet from said Avenue F, a (comparatively narrow) street called Hill avenue ran into said Thirty-Fourth street from the west at an oblique angle, but did not cross, and that on the east, about 110 feet from said Avenue F, an alley at right angles to said Thirty-Fourth street  ran into said Thirty-Fourth street in said block, but did not cross same; that Willow avenue ran into said Thirty-Fourth street from the west (but did not cross) at a point the equivalent of about two blocks south of said Avenue F, and that no other streets or alleys were actually cut into said Thirty-Fourth stret from said Avenue F south to said Willow avenue; that said Thirty-Fourth street ran down the south side of the hill to Clairmont avenue, along which was another street car line, being the Mountain Terrace line, which was about three blocks south of the Avondale car line, which last-named car line was the one hereinbefore mentioned running along Avenue F; that the legal and regular authorities had been complained to by citizens of Birmingham living in said blocks on Thirty-Fourth street as much as a year before the said accident happened, and had been requested to remedy the dangerous conditions existing in said Thirty-Fourth street, between Avenue F and Hill avenue, but had not done so; that the street department of said city of Birmingham, under the direction of its street commissioner (who was the duly and legally constituted officer for that purpose), had about six months before said accident opened said alley and rendered it pass-

[Ivey v. City of Birmingham.]

able for pedestrians and vehicles into, but not across, said Thirty-Fourth street at said point about 110 feet south of said Avenue F, and at another time said city, acting under ordinance, had repaired and macadamized that part of said Thirty-Fourth street from said Mountain Terrace car line on the south to a point about 110 feet north of said Willow avenue, but said ordinance did not include that part of Thirty-Fourth street between Avenue F and Hill avenue, and had charged the property owners as provided by law with the costs thereof; that said city, in charging the costs thereof, charged a part of said costs against several property owners on said Thirty-Fourth street north of said Willow avenue, and as far north as 100 feet north of said Willow avenue, for the cost of paving the street intersection; that the said city forces had also at said time used the street department scrapers and convicts working on the street to dig same with picks and shovels and with said scrapers, in some degree to smooth over the surface of that part of said Thirty-Fourth street used by vehicles from the point where said macadam ceased on down to said Avenue F; and that at one time prior thereto, before the last-mentioned work was done, some iron pipe was laid in said ditch and same covered with dirt, but said ditch was never filled up, and said dirt was soon washed out, but it was not shown that said pipe was laid by said city of Birmingham, nor by whom same was laid.

Plaintiff further introduced evidence on said trial tending to show that defendant never had prohibited the use of said Thirty-Fourth street at any point south of said Avenue F, and never had warned or notified the public, or plaintiff, or any one, against the use thereof, and never had barricaded or otherwise physically closed said street, or attempted to prevent the public

from using same, and that defendant never had, by ordinance,. resolution, or other proceedings, attempted to close or vacate said street at the point where plaintiff was injured, or at any point in question in this cause. Plaintiff thereupon introduced evidence tending to show that he had filed with the city clerk a claim for damages in accordance with the provisions of section 1191 of the Code.

Defendant on said trial introduced evidence tending to show that it had done no other than said work of macadamizing and laying sidewalk on said Thirty-Fourth street, but had smoothed the roadway of Thirty-Fourth street to a point about 100 feet north of said Willow avenue, and that defendant never had, by any ordinance, resolution, or other proceeding of its governing body, recognized said Thirty-Fourth street from said Avenue F south. to where said street was macadamized as above stated; that defendant never had actually taken any cognizance of said part of said Thirty-Fourth street; that said part of said Thirty-Fourth street was very steep, and not passable by vehicles, and that there was no passable crossing where said Thirty-Fourth street and said Avenue F cross; that before the part of Thirty-Fourth street in question in this cause was taken within the corporate limits of defendant's municipality the said part of said Thirty-Fourth street was not within the corporate limits of any existing municipality; that Willow avenue is about 700 feet from the point of the accident; that from Avenue F to Hill avenue, the hill is very steep; that Hill avenue is 25 or 30 feet higher than Avenue F, and on account of this natural steepness, it is impracticable to be used and maintained as a street, and that Street Commissioner Gafford stated to several citizens, who requested him to work the street, that he would not undertake to do any

work between Avenue F and Hill avenue, unless the city governing body expressly ordered it, and that neither he, nor his department, nor any one working under him, ever undertook or did any work of any kind on that part of Thirty-Fourth street between Hill avenue and Avenue F, which was the portion of Thirty-Fourth street at which plaintiff received his injury; that the work done on the alley leading into Thirty-Fourth street is south of the point where Hill avenue runs into said Thirty-Fourth street, and said work did not extend into Thirty-Fourth street, but stopped at the east line of Thirty-Fourth street, where said alley intersects it, and was done so that merchants could get on top of the hill, the route below Hill avenue being impracticable.

HARSH, BEDDOW & FITTS, for appellant.

ROMAINE BOYD, and M. M. ULLMAN, for appellee.

SAYRE, J.—Appellant sued the city of Birmingham for damages on account of physical injuries suffered by him when he fell into a ditch, alleging with appropriate detail that the municipal authorities of the defendant city had negligently allowed said ditch to be and remain in Thirty-Fourth street, whereby he was injured. Errors are assigned upon the rulings of the trial court in giving and refusing special charges requested in writing by the parties.

Very clearly it appears that the result of the trial was made to turn upon the inquiry whether Thirty-Fourth street at the point where plaintiff received his injury was at the time a public street of the city of Birmingham in such sort as to impose upon the municipal authorities the duty of keeping it in a fit condition

for public travel. This inquiry was submitted to the jury's decision as a question of fact, and the charges drawn into question were designed to elucidate the principles of law to be observed by the jury in determining the answer on consideration of the evidence, which will be stated by the reporter substantially as it is to be found stated in the transcript of the bill of exceptions. We have only to consider whether there was error in the court's ruling as to any one of these charges.

(1, 2) Charge 1, requested by plaintiff and refused by the court, would have been useful to plaintiff in the event the jury found that the status of Thirty-Fourth street—or that part of it about which we need be concerned—as a highway had been established before its incorporation into the city of Birmingham. The owner of the property through which this street was originally laid off could not impose his dedication of the street upon the public by platting the territory and disposing of lots according to the plat. He thereby made it a way, irrevocable as to purchasers; but to devolve upon the public the duty of maintaining the way as a public road or street it was necessary that there should be an acceptance by the public of the dedication. Such acceptance, for one way, may be shown by long-continued user by the unorganized public as of right. The length of time of such user, from which an acceptance may be implied, "does not depend upon the principles of law governing prescription, but is controlled entirely by the circumstances of each case, the main question being whether the public convenience and accommodation would be materially affected by a denial or interruption of the enjoyment."—*Benton v. St. Louis,* 217 Mo. 687, 118 S. W. 418, 129 Am. St. Rep. 561, note, pages 609, 621; *Mobile v. Fowler,* 147 Ala. 403, 41

South. 468; 1 Elliott on Roads & Streets (3d Ed.), §§ 170, 171. Under the evidence in this case is was for the jury to say whether Thirty-Fourth street had been accepted by the public as a highway previous to its incorporation into the city of Birmingham.

(3) If that part of Thirty-Fourth street upon which the injury occurred had been completely impressed with the character of a highway when the territory through which it had been laid off was annexed to the city, then the municipal authorities, by bringing it within the corporate limits and leaving it open for travel, became bound to exercise reasonable care to keep it in safe condition for travel.—*Frankfort v. Coleman,* 19 Ind. App. 368, 49 N. E. 474, 65 Am. St. Rep. 412; note to *Elam v. Mt. Sterling,* 20 L. R. A. (N. S.) 575.

Appellee cites and quotes *McCain v. State,* 62 Ala. 138, as follows: "A town, created and incorporated as this [Anniston] was, out of rural territory, having, perchance, its public roads adapted to its wants and conveniences as a rural community, cannot be bound by any principle of law to adopt and keep up, as a public street, every public road or highway that may have been in use before the change. * * * We think the corporate authorities were authorized to abolish the street, or, to refuse to recognize it as a public street, for not repairing which the appellants were indicted."

This language was used in a case in which the municipal authorities had passed an ordinance abolishing or discounting a road that had been brought into the incorporated town—a case which turned upon the inquiry whether the municipal authorities had power to pass such an ordinance. It does not expressly or by implication deny—to state the case at hand—that if Thirty-Fourth street had been accepted by the public as a highway prior to its incorporation into the munic-

ipal territory, it became the duty of the city to care for it or by some act of public notoriety to disown it. There was no evidence tending to show the last-named alternative, and, we take it, plaintiff was entitled to have the law stated in respect to the first without reference to the last.

(4) Appellee advances the idea that the ditch was not a defect for which the municipality was chargeable under the statute. The argument is based upon the opinion of the Court of Appeals in *Bessemer v. Whaley,* 8 Ala. App. 523, 62 South. 473. But that argument has been disposed of by us in *Bessemer v. Whaley,* 187 Ala. 525, 65 South. 542. If Thirty-Fourth street was a public street in the city of Birmingham at the time of plaintiff's hurt, then the ditch was a defect in the street, to remedy which defendant ought to have exercised itself. Nor do we find anything in *Benton v. State ex rel. Girard,* 168 Ala. 175, 52 South. 842, in necessary conflict with what we have said.

(5) Appellee also criticizes the charge under consideration, for that it predicated municipal duty in respect of highways without qualification, whereas highways may be private, in which case the public authorities owe no duty. The first section of Elliott's Roads and Streets, to which many adjudicated cases are cited, answers this contention in this language: "Ways are either public or private. A way open to all the people is a highway. The term 'highway' is the general name for all kinds of public ways, including county and township roads, streets and alleys, turnpikes and plank roads, railroads and tramways, bridges and ferries, canals and navigable rivers. In short, every public thoroughfare is a highway."

We are of the opinion that the refusal of charge 1 was reversible error.

(6) It cannot be the subject of dispute that the city adopted a part at least of Thirty-Fourth street, between Avenue F and Clairmont avenue as a public street and exercised jurisdiction over it. The fact that the authorities improved a part of the street, assessing the cost against the attingent property by virtue of the statute which grants that power to municipal corporation, is susceptible of no other explanation. In the circumstances shown in the bill of exceptions, we think this fact should have been received as prima facie evidence of an adoption of the entire street between these avenues. Appellee cites *Ruppenthal v. St. Louis,* 190 Mo. 213, 88 S. W. 612, and some other earlier Missouri cases to sustain its position; but that case has been overruled on the point at issue.—*Benton v. St. Louis,* 217 Mo. 687, 118 S. D. 418, 129 Am. St. Rep. 561. Our opinion on this point seems to be sustained by the reasoning of a majority of the courts that have considered the question and to be enforced by the logic of undisputed facts. See note to *Benton v. St. Louis,* 129 Am. St. Rep. 617.

Charge 20 should have been refused.

We need not follow the assingnments of error further. We have said enough to indicate our opinion as to the questions involved. The judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

MCCLELLAN, DE GRAFFENRIED and GARDNER, JJ., concur.