Gary Blair appeals from a summary judgment entered in favor of the defendant, Harold Fullmer, in an action seeking to enjoin Fullmer from obstructing a public road that Blair alleges exists on Fullmer's property.
In 1958, G.B. Caudle and Mary Sue Caudle sought to subdivide their property in Talladega County. The Caudles drafted a plat of the proposed Caudle Lake Subdivision and filed it in the office of the probate judge of Talladega County. The Caudles then held an auction to sell all of the subdivision lots. Four purchasers, including Gary Blair's parents, bought lots at the auction, receiving deeds in July 1958. The plat apparently[1]
showed a road beginning at a public highway, crossing the Caudle Lake Subdivision, circling a lake on the property, and connecting to the two lots purchased by the Blairs. Gary Blair now seeks to have that platted road declared a public road. It appears that all of the lots sold were situated on the outer perimeter of the Caudles' property and that all had ingress to and egress from existing public highways by way of easements independent of the road shown on the recorded plat. Although Gary Blair stated in an affidavit that G.B. Caudle bulldozed a road around the lake at the time of the sale of the lots, he admitted that it was never maintained. Mary Sue Caudle and others gave affidavits stating that there was never a road circling the lake, and there was no evidence that any of the purchasers of the lots had ever used any road across the land retained by the Caudles for access to their lots.
Following the auction, the Caudles withdrew the remainder of the estate from sale and retained ownership of that acreage, approximately 384 acres, until 1973, when they conveyed their entire estate to Goodwin Realty and Investment Company. Goodwin Realty also acquired two lots, totalling 96.5 acres, that had been purchased by other parties in 1958. In 1977 Goodwin Realty conveyed these parcels, approximately 480 acres, to Harold and Marjorie Fullmer. *Page 1309 
Gary Blair's parents were the owners of a large farm that was adjacent to the Caudles' original estate. At the 1958 auction, they purchased lots A and B, 37.25 and 27.3 acres respectively. These lots were contiguous to the Blair farm. Access to the land that comprised these lots has always been gained by way of an improved road that is situated on the Blairs' property.
In 1975, the Blair parents divided their farm and conveyed a portion to Gary Blair and a portion to his brother, Linder O. Blair. The land that comprised the Caudle Lake Subdivision lots is included in that portion now owned by Gary Blair. The Blairs divided their property in such a way that the improved road on the Blair property was located primarily on the land that was deeded to Linder Blair. Thus, Gary Blair had to travel across his brother's property to reach his own property. A dispute arose between the brothers concerning access to the road, and in 1982 Gary Blair filed an action against his brother and their parents in Talladega Circuit Court, seeking an easement by necessity across his brother's property. In 1989 the circuit court granted an easement to Gary Blair. Shortly thereafter, Gary Blair brought this action, alleging the existence of a public road, as shown in the recorded plat of the Caudle Lake Subdivision, and seeking to enjoin Harold Fullmer from interfering with his use of this road.
In entering a summary judgment for Fullmer, the trial court relied on CRW, Inc. v. Twin Lakes Property Owners Association,Inc., 521 So.2d 939 (Ala. 1988), and Cottage Hill Land Corp. v.City of Mobile, 443 So.2d 1201 (Ala. 1983), held that "[a]cceptance of a proffered dedication is necessary," and stated that it found "there was never an acceptance of this strip of land as a public road." Blair contends that the trial court erred in relying on these cases. He seeks to have this Court follow Gaston v. Ames, 514 So.2d 877 (Ala. 1987), and hold that there has been an irrevocable dedication of the road shown in the recorded plat for the Caudle Lake Subdivision and that such dedication, alone, makes the road shown on the plat a public road.
In Cottage Hill Land Corp. v. City of Mobile, supra, the Court said:
 "The filing of a map or plat 'in substantial compliance with the statutory requirements constitutes a valid dedication to the public of all streets, alleys, and other public places.' Johnson v. Morris, 362 So.2d 209, 210 (Ala. 1978). Under early Alabama statutory authority, streets indicated on a recorded and acknowledged plat were considered to be dedicated to the public use without awaiting acceptance or use by the public. See Code 1907, § 6030; Manning v. House, 211 Ala. 570, 100 So. 772, 774 (1924). This is no longer true, however. See Code 1975, § 11-52-32(b). Acceptance of a proffered dedication is necessary.
McQuillin, [Municipal Corporations (3d ed. revised 1971)], § 33.43; Tuxedo Homes v. Green, 258 Ala. 494, 497-498, 63 So.2d 812, 814 (1953)."
Cottage Hill, supra, at 1203 (emphasis added). The holding inCottage Hill was followed in CRW, supra.
The language in Cottage Hill stating that acceptance is required is dictum in any event, because the city planning commission, as a condition of its approval of the subdivision plat, required a 100-foot right-of-way to be added at the southern end of the plat for a proposed thoroughfare that had been placed on the commission's master plan in the late 1940's. 443 So.2d at 1202. Thus, the question of acceptance of the dedicated right-of-way was not even at issue. Moreover, the Court said:
 "In determining what property is dedicated to the public, the map or plat is to be construed in its entirety. Johnson v. Morris, supra, 362 So.2d at 210. From the specific circumstances of this case, the Court concludes that the circuit court was authorized to find that 'every line of the survey which served to mark those parts of the site which were intended to be reserved from sale for use of the public became unalterably fixed, dedicated to the public for all time' once lots were sold with reference to the Bridlewood Estates subdivision plat. Snead v. Tatum, 247 Ala. 442, 443, 25 So.2d 162, 163 (1946); Webb v. City of Demopolis, *Page 1310 95 Ala. 116, 126, 13 So. 289, 292 (1891). Furthermore, this dedication has been perfected despite the fact that the city has not yet constructed a public roadway on the property platted and dedicated as a future thoroughfare."
443 So.2d at 1203.
The following statement appears in CRW, Inc., supra:
 "CRW argues at length in its brief that recordation of the Twin Lakes plat in the Probate Court of St. Clair County constitutes a dedication of the road to public use. Code 1975, § 11-52-32(b). We do not agree that recordation, standing alone, constitutes a dedication. Dedication of a public road may be accomplished by a statutory proceeding or by common law dedication."
521 So.2d at 941. The Court then cited Cottage Hill for its statement that "Acceptance of a proposed dedication is necessary." The evidence in CRW would have supported a finding that by filing the plat for record the developers of the Twin Lakes Subdivision did not intend to dedicate the roads therein to public use, or that, if they had so dedicated them when the plat was filed in 1970, that dedication had been vacated by a consent judgment in 1977 by which a "Twin Lakes Trust" was established and the developer's interest in the Twin Lakes roads was transferred to the trust. Furthermore, when the Twin Lakes property was annexed into the City of Moody, the city council "approved a zoning ordinance allowing the Twin Lakes roads to remain private subsequent to the annexation." Id., at 940. Thus, the Court affirmed a judgment that CRW could not connect its subdivision to the Twin Lakes roads and thereby reach a public highway.
Alabama Code 1975, § 35-2-50, provides in pertinent part:
 "Any person . . . desiring to subdivide his lands into lots shall cause the same to be surveyed by a competent surveyor . . . and shall cause a plat or map thereof to be made."
Section 35-2-51 provides in pertinent part:
 "(a) The plat or map having been completed shall be certified by the surveyor, which certificate must also be signed by the owner . . . and acknowledged by such owner . . . in the same manner in which deeds are required to be acknowledged. The plat or map, together with the certificate of the surveyor and acknowledgment, shall be recorded in the office of the judge of probate in the county in which the lands are situated, . . . and such acknowledgement and record shall have like effect . . . as in the case of deeds.
 "(b) The acknowledgment and recording of such plat or map shall be held to be a conveyance in fee simple of such portion of the premises platted as are marked or noted on such plat or map as donated or granted to the public, and the premises intended for any street, alleyway, common or other public uses, as shown in such plat or map, shall be held in trust for the uses and purposes intended or set forth in such plat or map."
Section 35-2-51(b) is identical to Code 1907, § 6030, referred to in Cottage Hill, supra, as "early Alabama statutory authority."
Section 35-2-52 prohibits a probate judge from accepting a plat of lands lying within a city having a population of more than 10,000 inhabitants unless the governing body or the city engineer has noted its approval on the plat; significantly, no such requirement is made regarding plats of rural land.[2] Section35-2-53 provides for vacation of a plat before the sale of any lots or, after the sale of lots, by all the owners of lots. Fullmer purported to execute the latter type of vacation shortly before this action was filed but, without Blair's approval, that document obviously does not comply with §35-2-53. Similarly, § 35-2-54 provides for the vacation of streets by abutting landowners, but Fullmer's document *Page 1311 
can have no effect under this section without Blair's participation. Compare § 35-2-55, which requires in some instances city or county approval of vacation of public roads, and § 35-2-58, which provides for a circuit court action for vacation of a plat or a street or road.
Tuxedo Homes, Inc. v. Green, 258 Ala. 494, 63 So.2d 812
(1953), simply held that approval of a plat by a city engineer as provided in what is now § 35-2-52 is a ministerial duty to be performed if the offered plat conforms to all pertinent laws and regulations, and that such approval does not constitute acceptance by the city of a proposed dedication of the streets set out in the plat. Tuxedo Homes cites Ivey v. City ofBirmingham, 190 Ala. 196, 67 So. 506 (1914), which held that recordation of a plat and subsequent annexation of the land by the city did not impose on the city a duty to maintain the streets shown therein and that, therefore, the city was not liable for injuries on such a street simply because the plat had been recorded. The Court there said that the owner, by platting the street and recording the plat, "thereby made it a way, irrevocable as to purchasers; but to devolve upon the public the duty of maintaining the way as a public road or street it was necessary that there should be an acceptance by the public of the dedication." 190 Ala. at 204, 67 So. at 509. The principle of Ivey can thus be traced through Tuxedo Homes
and Cottage Hill to CRW, with the above-described changes in the effect of the holding.
Section 11-52-32(b), also relied on in Cottage Hill, reads:
 "Every plat approved by the commission shall, by virtue of such approval, be deemed to be an amendment of or an addition to or a detail of the municipal plan and a part thereof. Approval of a plat shall not be deemed to constitute or effect an acceptance by the public of any street or other open space shown upon the plat."
The "commission" mentioned therein is a municipal planning commission or a county planning and zoning commission in a county having a population of 600,000 or more inhabitants. No such commission existed in 1958 with jurisdiction over this rural Talladega County land.
Blair seeks to have this Court follow Gaston v. Ames,514 So.2d 877 (Ala. 1987); City of Fairfield v. Jemison, 283 Ala. 462, 218 So.2d 273 (1969); Stack v. Tennessee Land Co.,209 Ala. 449, 96 So. 355 (1923); and other cases that, he says, do not require acceptance of roads dedicated in recorded plats. InGaston, the county had approved a subdivision plat but had not otherwise accepted the roads shown thereon. The Court treated the recordation as sufficient, with no requirement of acceptance:
 "Having met those two requirements [of §§ 35-2-50
and § 35-2-51(a)], [the developer] is deemed to have made a conveyance in fee simple of all areas granted or dedicated to the public. § 35-2-51(a), Code of Alabama (1975). '[S]ubstantial compliance with the statutory requirements constitutes a valid dedication to the public of all streets, alleys, and other public places.' Johnson v. Morris, 362 So.2d 209, 210 (Ala. 1978). Cottage Hill Land Corp. v. City of Mobile, 443 So.2d 1201, 1203
(Ala. 1983)."
514 So.2d at 879.
Whatever the effect of Cottage Hill and CRW on the other cases and the statutes on point, those two cases clearly do not deprive a purchaser of a lot in a subdivision of the right to the roads shown in the subdivision plat. It is certainly the case that a city or county must accept such a dedication (perhaps by the general public's use of the roads) before there arises a duty on the governing body to maintain the roads, and it may be that those two cases require an acceptance by a public body before the general public can be given the right to use the roads. We hold, however, that the trial court erred in relying on those two cases to enter summary judgment for Fullmer.
Fullmer does not challenge the compliance of the Caudle Lake Subdivision plat with the statutory requirements except to say that, because the plat showed only a "proposed" subdivision and roads, no clear *Page 1312 
intention to dedicate the roads to public use was shown. Such an argument would defeat any dedication through a plat, because the plat is recorded before the subdivided lots are sold. Thus, any plat shows a "proposed" subdivision. Furthermore, although the plat is not before us and there is no statement of the total size of the subdivided land, it appears from the deeds in the record that the Caudles sold 12 lots totalling 403.65 acres to four grantees and retained approximately 384 acres.
Fullmer cites §§ 11-3-10 and 23-1-80 as grounds for requiring acceptance by a county of a proposed dedication of a public road not within the jurisdiction of a municipal or county planning or zoning commission. Those sections, however, provide general authority of county commissions over roads and do not repeal the specific provision of § 35-2-51(b) by virtue of which recordation of a plat constitutes a dedication of the roads therein with no requirement of acceptance by any county governing authority.
Fullmer also argues that, if there was a proper dedication, any public road created thereby has been abandoned by the complete lack of use thereof for more than 20 years. He citesBarber v. Anderson, 527 So.2d 1296 (Ala. 1988); Walker v.Winston County Comm'n, 474 So.2d 1116 (Ala. 1985); Floyd v.Industrial Dev. Bd. of the City of Dothan, 442 So.2d 927
(Ala. 1983); and Harbison v. Campbell, 178 Ala. 243, 59 So. 207
(1912).
None of those cases, however, involved the question of the effect of nonuse of a road or other land dedicated to the public. That very question was presented in Hebert v. TrinityPresbyterian Church of Montgomery, 289 Ala. 455, 458,268 So.2d 736, 738 (1972), involving a dedicated alley, in which it was said:
 "[N]either nonuser, nor the rule of prescription, nor the statute of limitations, nor the doctrine of equitable estoppel can be invoked to nullify a public dedication. Harn v. [Common Council of] Dadeville, 100 Ala. 199, 14 So. 9 [1893]; Alexander City U.W. S. Co. v. Central of Ga. Railway Co., 182 Ala. 516, 62 So. 745 [1913]."
See also Hood v. Neil, 502 So.2d 749 (Ala. 1987); City ofFairfield v. Jemison, 283 Ala. 462, 218 So.2d 273 (1969);Garland v. Clark, 264 Ala. 402, 88 So.2d 367 (1956); Talley v.Wallace, 252 Ala. 96, 98, 39 So.2d 672, 674 (1949) ("The extent of its use as an alley in no manner affects the question of its dedication. . . . Nor was this unrestricted dedication lost to the public by the delay or entire failure of the county authorities to prepare it for the public use."); City ofFlorence v. Florence Land Lumber Co., 204 Ala. 175,85 So. 516 (1920); Smith v. City of Opelika, 165 Ala. 630, 51 So. 821
(1910).
For the foregoing reasons, the summary judgment cannot be affirmed on either the basis that a dedication of a public road must be accepted or the basis that any public road dedicated in the Caudle Lake Subdivision has been abandoned. Fullmer also argued at trial that Blair cannot now assert that there is a public road because, in his action against his brother, Blair obtained an easement by necessity by testifying that he had no access to his property by any public road. See, e.g.,Russell v. Russell, 404 So.2d 662, 665 (Ala. 1981). Aside from the question of whether Fullmer has pleaded or is entitled to raise such an issue of estoppel,[3] we decline to affirm on this basis, because the trial court did not rule on it and Fullmer has not raised it on appeal.
Blair has filed a motion for the cause to be remanded for Talladega County to be added as a necessary party, citingBoles v. Autery, 554 So.2d 959 (Ala. 1989). In view of our reversal of the judgment, the motion is moot. If, on remand, Blair were to argue that the road should be accepted and maintained by the county, the county would obviously be a necessary party. *Page 1313 
REVERSED AND REMANDED; MOTION TO REMAND DENIED AS MOOT.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Neither the plat nor any other map of the property is included in the record before us.
[2] The mere fact of dedication does not necessarily impose upon the county a duty to maintain the road. Cf. Lybrand v. Town ofPell City, 260 Ala. 534, 538, 71 So.2d 797, 801 (1954), in which it was noted that a dedication of a street in a city "does not impose any duty upon the city until it has accepted the dedication."
[3] We note that the theory of dedication by plat recordation and sale pursuant thereto stems from the principle of estoppel by deed. See Stack, supra, 209 Ala. at 452, 96 So. at 358; City ofDemopolis v. Webb, 87 Ala. 659, 6 So. 408 (1889).