The plaintiffs appeal from a summary judgment entered in favor of the defendant Alabama State Department of Human Resources (the "Department")[1] on claims that the plaintiffs, Everline Dothard and her minor son Clint Dothard assert under42 U.S.C. § 1983. The claims arose from the death of Shante[2]
Dothard, Ms. Dothard's minor daughter and Clint's sister, as a result of being hit by her foster parent's cousin while in the Department's custody, *Page 355 
and from alleged beatings that Clint received while he and Shante were living with the foster parent. Ms. Dothard, for herself and on Clint's behalf, raises these issues: 1) whether the plaintiffs' evidence regarding the Department's alleged failure, after discovering that Clint and Shante had been hit with a belt as punishment, to take additional measures to ensure that they were safe and not being disciplined with a belt amounted to "substantial evidence" of a constitutional violation entitling the plaintiffs to a remedy under § 1983, and 2) whether the plaintiffs presented substantial evidence of willful neglect or deliberate indifference in the Department's alleged failure to devise a "follow-up" policy and procedure to use when abuse or other Department violations are discovered.[3]
We affirm, because we find no substantial evidence of deliberate indifference or of causation.
The Department gained temporary legal custody of Clint and Shante in 1981 after Ms. Dothard was diagnosed as suffering from schizophrenia and manic depression. In January 1982, the Department placed the children in Paulette Ford's home. Mrs. Ford had been approved as a foster parent in 1981 and was also keeping Pamela, another foster child.
During March 1982 Pamela's Department social worker visited Mrs. Ford's home and asked about the children. Mrs. Ford told her that she had not had to spank Clint or Shante.
On May 20, 1982, Merial Mathews, another Department social worker, visited Mrs. Ford's home. Mrs. Ford told Mrs. Mathews that she had spanked Clint and Shante once for stealing from a grocery store. During the conversation, Clint walked into the room with a belt and began grinning and nodding his head. This prompted Mrs. Mathews to discuss the Department's policy against using any instrument except the hand to spank foster children. Mrs. Ford stated that she understood. Although she did not conduct physical examinations of the children, Mrs. Mathews did observe them and did not see any marks or bruises on Clint or Shante. Mrs. Mathews discussed alternative methods of discipline with Mrs. Ford.
Mrs. Mathews also learned during this visit that Shante preferred sleeping with Mrs. Ford. Mrs. Mathews explained that the Department strictly forbids adults and foster children sleeping together. Mrs. Mathews suggested how to make transitions for Shante to sleep in another room with Pamela.
Mrs. Mathews instructed Mrs. Ford to report any household changes to the Department, and Mrs. Ford agreed to do so. Mrs. Mathews noted after her visit that, despite the violations, her general impression was that Mrs. Ford was providing good care for Clint and Shante, and that both children appeared happy to her.
On May 24, 1982, Mrs. Mathews wrote a memorandum to Carolyn Frith, the social worker assigned to Clint and Shante, in which she reported the violations and her discussion of Department policy with Mrs. Ford. She also suggested working with Mrs. Ford regarding alternative disciplinary methods and child care management, but stated that Mrs. Ford appeared to be doing a good job with the children. Mrs. Mathews wrote a letter to Mrs. Ford three days later, in which she complimented Mrs. Ford on her overall care of the children, but she reiterated that foster parents may not in any circumstances use a belt or other instrument to discipline a foster child, and that it was against Department policy for foster children to sleep with adults.
The next contact between the Department and Mrs. Ford was on July 2, 1982, when Mrs. Mathews and Ms. Frith went to remove the foster children from Mrs. Ford's home after the coroner had reported to Ms. Frith that Shante had died the day before as a result of a beating she had *Page 356 
received from Roderick Campbell, Mrs. Ford's cousin. Mr. Campbell had been staying with Mrs. Ford approximately two weeks and was babysitting for her on July 1 when he beat Shante twice. Mrs. Ford had not reported Mr. Campbell's presence in the home to the Department. Mrs. Mathews and Ms. Frith immediately removed Clint and Pamela from Mrs. Ford's foster home, which was officially closed a week later.
Mr. Campbell also admitted having hit Clint with a belt. Mrs. Ford denied knowledge of marks on Clint but admitted that she had "switched" Shante once or twice. The physician who examined Clint on July 2 found bruises on the back of his thighs that he determined were between 42 and 72 hours old.
In 1988, Ms. Dothard filed the complaint here under consideration; in it she alleged that Shante's wrongful death resulted from federal civil rights violations. She sued the State of Alabama, the Department, and other defendants. She also sued as Clint's mother and next friend for damages for alleged violations of Clint's civil rights. The trial court dismissed the complaint as to all defendants except the Department. In an unpublished order, this Court denied the Department's petition for a writ of mandamus or, in the alternative, a writ of prohibition, or other extraordinary writ, or an appeal raising the issue of sovereign immunity. The trial court later dismissed the complaint, based on the expiration of the statutory period of limitations, but gave Ms. Dothard until June 23, 1989, to amend her complaint. She amended her complaint to state a cause of action against the Department under 42 U.S.C. § 1983.
On November 14, 1991, the Department filed a motion for summary judgment, contending that a summary judgment was proper because the statutory period of limitations had expired; that Ms. Dothard could not properly sue on Clint's behalf because she did not have legal custody of him when she sued; that the Department was entitled to sovereign immunity or qualified immunity; and that the Department was not liable for the criminal acts of a third party. The trial court granted the motion, finding no substantial evidence of "willful indifference" or "gross negligence" sufficient to support a cause of action under § 1983, relying on Taylor v. Ledbetter,818 F.2d 791 (11th Cir. 1987), cert. denied, 489 U.S. 1065,109 S.Ct. 1337, 103 L.Ed.2d 808 (1989). The trial court appointed James R. Morgan and J. Wynell Brooks Crew, Clint's attorneys, as guardians ad litem to prosecute the action on Clint's behalf. The plaintiffs appeal.
In reviewing a summary judgment, we take into account the same factors that the trial court considered, Havens v.Trawick, 564 So.2d 917, 919 (Ala. 1990), and we must consider the facts before the trial court in a light most favorable to the non-moving party. Tripp v. Humana, Inc., 474 So.2d 88
(Ala. 1985). The movant has the initial burden of showing that no genuine issue exists as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. If the movant makes this prima facie showing, then the burden shifts to the nonmovant. Maharry v.City of Gadsden, 587 So.2d 966, 968 (Ala. 1991). For actions not pending on June 11, 1987, the nonmovant must offer "substantial evidence" to overcome the prima facie showing. See Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). Our review is denovo. Maharry, 587 So.2d at 968.
Ms. Dothard does not dispute that the Department made a prima facie showing that it was entitled to a summary judgment. However, she contends that in rebuttal she offered substantial evidence to preclude the summary judgment. She basically alleges that Department personnel, knowing that Mrs. Ford had violated Department policies, including hitting Clint and Shante with a belt, did not take affirmative steps to ensure that the children would not be subject to such punishment *Page 357 
again and that the Department willfully neglected or was deliberately indifferent to those infractions and that she was entitled to recover under § 1983 as that section was construed in Taylor.
In Taylor the Eleventh Circuit Court of Appeals, sitting enbanc, held that a foster child's guardian who alleged that state and local officials were grossly negligent and deliberately indifferent in placing the child in a home where she was beaten and rendered comatose had stated a cause of action under § 1983. Taylor, 818 F.2d at 795. An agency may be held liable if its top supervisors are deliberately indifferent "to a known risk, a known injury, or a specific duty and their failure to perform the duty or act . . . was a proximate cause [of a constitutional deprivation]:" Id. at 797.
The parties disagree as to whether Taylor applies, because this action was filed before Taylor was decided. We need not resolve that dispute, because, whether or not Taylor applies, Ms. Dothard has not offered substantial evidence to support her claims.
We recognize that the United States Constitution imposes a duty on the state to assume some responsibility for the safety and general well-being of persons it takes into its custody and holds against their will. DeShaney v. Winnebago CountyDepartment of Social Services, 489 U.S. 189, 199-200,109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989). The historical constitutional guarantee has been to protect against deliberate governmental deprivations of life, liberty, or property.Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665,88 L.Ed.2d 662 (1986). Regarding the claims of deliberate indifference in this case, the following excerpt from Judge Cherner's order is relevant:
 "Counsel for Everline Dothard and Clint Dothard say that there is sufficient evidence to present a jury question whether the Department deliberately failed to learn what was occurring in the foster home and that the deliberate failure resulted from the customs and practices of the Department. Counsel argues that when Mathews learned that the children had been 'beaten with a belt,' she should have taken further actions, i.e., she should have conducted private interviews of the children; she should have made physical examinations; and she should have made more frequent visits.
 "This Court disagrees that the conduct of Mathews is sufficient to warrant a finding of deliberate indifference. Assuming the evidence most favorable to Everline Dothard and Clint Dothard for purposes of the Department's motion for summary judgment, there was only disclosed to the Department one instance of abuse, i.e., the spanking of the children with a belt.
 "Far from being indifferent to this one instance of abuse, Mathews immediately informed the foster mother that the use of a belt or other instrument to spank children was contrary to Department policy and not permitted.
 "As further evidence of her concern, Mathews included in her report a reference to the violation of Department policy and the fact that she had advised the foster mother of the same and instructed her that she was not allowed to spank foster children.
 "No evidence has been presented that in early 1982 the Department had any information that Paulette Ford was an unfit person to be entrusted with the custody of the Dothard children. Evidence was presented of visits to Paulette Ford's home in January, March, and May 1982. Even if it be assumed for the sake of argument that the Department's visits to the foster home should have been more frequent, the failure to conduct visits more frequently than every two months cannot be a sufficient basis for finding deliberate indifference by the Department."
R. at 400-01.
We agree with Judge Cherner. Reviewing the facts before the trial court in a light most favorable to Ms. Dothard, the nonmovant, we conclude that the only inference that can be drawn is that there was one disciplinary violation of which Department *Page 358 
personnel were aware, or should have been aware of, and that this violation prompted three responses by Mrs. Mathews. First, she explained the policy against using instruments to discipline foster children and discussed alternative methods. Second, she wrote a report to the social worker assigned to Clint and Shante. Third, she reiterated in a letter what she had told Mrs. Ford about the infractions. Mrs. Mathews testified in her deposition that in following this procedure she was doing more than she was required to do, and that there was no report, or even suspicion, of abuse. Even ifTaylor applies, these affirmative responses are sufficient to establish a prima facie showing that there was no deliberate indifference or willful neglect regarding the children's safety.
Whether or not Taylor applies, Ms. Dothard did not offer substantial evidence that any act or failure to act by the Department proximately deprived her or either child of a constitutional right, so as to authorize a suit under 42 U.S.C. § 1983. The evidence shows that the Department had no knowledge that Mr. Campbell was living with Mrs. Ford, because she did not report his presence. We agree with the trial court that it is speculative at best to say whether more frequent visits or another "follow up" policy would have prevented Shante's death or alleged violations of Clint's civil rights.
In any action under § 1983, "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation" is required. Zatler v.Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); see also Collinsv. City of Harker Heights, ___ U.S. ___, ___, 112 S.Ct. 1061,1066, 117 L.Ed.2d 261 (1992). Furthermore, prevailing tort concepts of proximate causation guide analysis of a claim under § 1983. See Johnson v. Greer, 477 F.2d 101, 106 (5th Cir. 1973). One such guiding concept is that "foreseeability is the cornerstone of proximate cause." General Motors Corp. v.Edwards, 482 So.2d 1176, 1195 (Ala. 1985). Nothing that the Department did or did not do could have been the proximate cause of the injuries alleged in this case, because Department personnel, not knowing that Mr. Campbell was staying in Mrs. Ford's home, could not have foreseen that he would hit the children and cause one of them to die. Without substantial evidence of proximate cause, Ms. Dothard's claims must fail.
Having addressed the merits of the claims, we affirm the summary judgment in favor of the Department because Ms. Dothard presented no substantial evidence of deliberate indifference, willful neglect, or proximate cause. It is, therefore, unnecessary to address the other arguments presented by the parties.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
KENNEDY, J., dissents.
[1] That state agency was previously known as the Department of Pensions and Security. On April 29, 1986, by Ala. Acts 1986, No. 86-432, the legislature changed the name of that agency.
[2] Sometimes in the record and the briefs the name is spelled "Shanta."
[3] In her original brief Ms. Dothard raised the issue whether the statute of limitations was tolled by her mental incompetency or by Clint's minority, but in her reply brief she asserts that the limitations issue is not ripe for review because the trial court did not rule on it. We therefore decline to address the question. See, e.g., Blair v. Fullmer, 583 So.2d 1307, 1312
(Ala. 1991).